21465. VANDIVER *et al.*, Commissioners v. CARLIN.

 

Argued November 14, 1961—Decided January 4, 1962.

*Adams & McDonald, Zack D. Cravey, Jr.,* for plaintiffs in error.

*Dan Winn,* contra.

Head, Presiding Justice. Albert L. Carlin brought a petition for mandamus against the members of the Board of Commissioners of the Peace Officers' Annuity and Benefit Fund, and the board, for reinstatement as a member in the fund and the payment of benefits thereunder. It was alleged: The plaintiff was approved for membership in the fund on August 5, 1952, and was subsequently approved for retirement on January 29, 1954. He received monthly retirement payments until October 13, 1955, at which time his retirement benefits were discontinued. The reason given by the defendants for discontinuing the retirement benefits was that the plaintiff is not entitled to credit for certain years claimed by him as being creditable service. "Petitioner shows that during said entire period of 17 years and 11 months he was a properly deputized deputy sheriff of Hall County, Georgia, he having taken the proper oath of office as did the other deputy sheriffs of Hall County, and was under official bond to the Sheriff of Hall County during the entire period of time. One of the main reasons for petitioner's being appointed deputy sheriff was the necessity for having additional law enforcement in Chicopee, Georgia, which is a mill village in Hall County, and is unincorporated, and which mill was operated by Chicopee Manufacturing Company at that period time. The Company requested the Sheriff to appoint a deputy sheriff to give them additional law enforcement protection in the Chicopee area (not just on mill property) and as the sheriff was unable financially to pay another deputy en-

tirely, the mill agreed to pay him a salary provided the Sheriff appointed him, and the Sheriff did appoint petitioner as deputy sheriff. During the entire time he served as deputy sheriff his duties were not confined to said mill village or area (though he did give special attention to that village because they had no other police protection except from the Sheriff's Office) but his activities were under the control of the Sheriff, and he was used by the Sheriff all over the county, and at all hours of the day or night. He received fees from the Sheriff on arrests which he made, and was paid mileage and fees by the Sheriff in taking patients to Milledgeville State Hospital. His duties included attendance on all terms of the Courts of said County. His entire powers and authority were from the Sheriff, and he was under the control of the Sheriff during said entire period as a full time Peace Officer within the meaning of the Act governing the Peace Officers' Annuity and Benefit Fund."

The defendants filed general and special demurrers and an answer. The trial judge overruled the grounds of demurrer that were not withdrawn by the defendants. The case was tried before the judge without the intervention of a jury, and the judge entered an order granting the mandamus absolute. The defendants assign error in their bill of exceptions on the overruling of their demurrers, and on the denial of their motion for new trial.

Since the plaintiff was approved for membership in the Peace Officers' Fund on August 5, 1952, the applicable law determining his eligibility for membership in the Fund is the act of 1950 (Ga. L. 1950, pp. 50, 53). Whether or not the allegations of the petition, as against the general demurrers, are sufficient to show such service as a peace officer as would comply with the requirements of this act, it clearly appears from the evidence that the plaintiff was not eligible to membership in the Fund.

The evidence shows that, during the period of time in question, the plaintiff was a duly commissioned and bonded Deputy Sheriff of Hall County under seven sheriffs, and that he devoted his full time as a law enforcement officer. It is not disputed, however, that during this time he was a full-time employee of Johnson & Johnson's Chicopee mill plant, and was paid a regular salary

by the mill. He ordinarily performed his law enforcement duties in the unincorporated village of Chicopee, in which the mill was located, but on occasions he was called on by the sheriffs under whom he served to perform the duties of a deputy sheriff in other areas of the county, and outside the county. He testified that the fees received for these services from the sheriff's office amounted to from $75 to $150 per year, and that he was also paid by the mill on an over-time basis when he performed duties for the sheriff at a time when he was not on regular duty as an employee of the mill.

Section 8 of the act of 1950 (Ga. L. 1950, pp. 50, 53), provided in part as follows: "The term 'peace officer', as used in this Act, shall mean all peace officers who are employed by the State of Georgia, or any subdivision, or municipality thereof, who are required by the term of their employment, whether by election or appointment, to give their full time to the preservation of public order, or the protection of life and property, or the detection of crime in the State of Georgia, or any political subdivision or municipality thereof. . ." (See Ga. L. 1958, pp. 341, 344; *Code Ann. Supp.* § 78-901, for the present definition of the term "peace officer".)

While the plaintiff gave his full time to his duties as a law enforcement officer, he was not required *by the terms of his employment by the Sheriffs of Hall County* to give his full time to the work of a peace officer, but was required *by the terms of his employment by a private corporation* to perform such duties. He was not eligible for membership in the Peace Officers' Fund, and the trial judge erred in requiring the defendants to reinstate him in the Fund and to pay to him the benefits thereunder.

*Judgment reversed. All the Justices concur.*