## PEOPLE *v.* CAREY.

### DECISION OF THE COURT.

1. OBSTRUCTING JUSTICE—RESISTING ARREST—TRUCK DRIVER—DISPLAY OF LOGBOOK.

> Judgments of the circuit court and Court of Appeals affirming conviction of defendant truck driver of crime of resisting an officer in the discharge of his duty when asked to display his logbook are reversed by T. E. BRENNAN, C. J., and DETHMERS and T. M. KAVANAGH, JJ., because provision of statute under which the public service commission inspector had been declared a peace officer was unconstitutional, and by ADAMS, J., because authority of such an inspector did not extend to enforcement of provisions of motor carrier safety act; KELLY and BLACK, JJ., dissenting on ground that question of constitutionality was not reviewable (Const 1908, art 5, § 21; CL 1948, § 475.1 *et seq.*; §§ 480.1a, 480.2).

### SEPARATE OPINION.

T. E. BRENNAN, C. J., and DETHMERS and T. M. KAVANAGH, JJ.

2. APPEAL AND ERROR—QUESTIONS REVIEWABLE—MOOT QUESTION—DISCHARGE FROM PROBATION.

> *Holding of concurring opinion of Court of Appeals that case for resisting an officer was moot by reason of defendant's dis-*

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 37 Am Jur, Motor Transportation §§ 19, 24, 32.
  39 Am Jur, Obstructing Justice §§ 8, 9, 12, 13.
[2] 4 Am Jur 2d, Appeal and Error §§ 273, 274.
[3] 37 Am Jur, Motor Transportation §§ 7, 17, 19, 24, 32, 35.
[4] 37 Am Jur, Motor Transportation §§ 32, 35.
  50 Am Jur, Statutes §§ 225, 226.
[5] 47 Am Jur, Sheriffs, Police, and Constables § 5.
[6, 9] 37 Am Jur, Motor Transportation §§ 17, 19, 32.
[7] 50 Am Jur, Statutes §§ 165, 190–197.
[8, 9] 50 Am Jur, Statutes § 190.
[10] 37 Am Jur, Motor Transportation §§ 24, 32.
[11] 37 Am Jur, Motor Transportation §§ 17–20.
[12, 13] 37 Am Jur, Motor Transportation §§ 24–32.
[14] 16 Am Jur 2d, Constitutional Law § 115.
  5 Am Jur 2d, Appeal and Error §§ 654, 726.

*charge from 2-year probation* held, *not dispositionally relevant, where defendant had continued to seek a new trial and filed a claim of appeal from various orders subsequent to the discharge.*

3. PUBLIC SERVICE COMMISSIONS—STATUTES—REGULATION—ENFORCEMENT—TRUCKS—PEACE OFFICERS.

*The public service commission was empowered to make rules and regulations under act "to promote safety upon the public highways by regulating the operation thereon of motor trucks, tractors and trailers" necessary to accomplish the purpose of the act, but the power to enforce the act and to demand display of a driver's logbook was unequivocally limited to peace officers (CL 1948, §§ 480.1a, 480.2).*

4. STATUTES—INTERPRETATION—PEACE OFFICER.

*"Peace officer" as that term is used in the act, "to promote safety upon the public highways by regulating the operation thereon of motor trucks, tractors and trailers", is plain and unambiguous and no interpretation or construction is necessary; hence, the Court can only give full effect to the plain meaning of the term used in the statute and cannot read into law a requirement that was omitted by the legislature (CL 1948, § 480.2).*

5. WORDS AND PHRASES—PEACE OFFICER—JUDICIAL CONSTRUCTION.

*"Peace officer", although not statutorily defined, has been judicially construed to include sheriffs and their deputies, constables, marshals, members of city police forces, and officers whose duty it is to preserve peace and tranquility in the community (CL 1948, § 480.2).*

6. PUBLIC SERVICE COMMISSIONS—MOTOR CARRIER ACT—LEGISLATIVE PURPOSE.

*The legislative purpose and policy in enacting the motor carrier act was to confer upon the public service commission the power and authority and to make it its duty to supervise and regulate transportation of persons and property for hire upon the public highways of this State (CL 1948, § 475.2).*

7. STATUTES—MOTOR CARRIER ACT—CONSTITUTIONAL LAW—SINGLE OBJECT OF ACT.

*The title of the motor carrier act which provides supervision, regulation, and control of motor vehicles for hire, as well as enforcement of the act and penalties for its violation, is a valid and proper exercise of legislative power; however, when the legislature attempted to create a new classification*

*of peace officers in the act by providing that the inspectors
appointed by the public service commission would have all
the powers of peace officers under State law, even though the
provision was within the legislative power, it is constitutionally
infirm because it is an object in addition to the singular object
of the act and not expressed in the title of the act (CL 1948,
§ 475.1 et seq.; Const 1963, art 4, § 24).*

8. CONSTITUTIONAL LAW—STATUTES—SINGLE OBJECT.

*The purpose of the constitutional provision that no law shall
embrace more than 1 object is to prevent the legislature from
passing laws not fully understood and to avoid bringing into
one bill subjects diverse in nature and having no necessary
connection (Const 1908, art 5, § 21; Const 1963, art 4, § 24).*

9. PUBLIC SERVICE COMMISSIONS—INSPECTORS—PEACE OFFICERS—
CONSTITUTIONAL LAW—ONE OBJECT.

*Motor carrier act provision conferring on inspectors appointed
by the public service commission all powers of peace officers
under the laws of this State is unconstitutional because it is
patently diverse in nature from the entire title and body
of the act and bears no necessary or rational connection to
supervision, regulation, and control of motor vehicles for hire
(CL 1948, § 479.13).*

10. SAME—POWERS OF INSPECTORS—PEACE OFFICERS.

*A public service commission inspector is not a peace officer
and he has no power outside the ambit of the motor carrier act
to stop a private vehicle or demand display of a logbook or
arrest the driver of a private vehicle (CL 1948, § 475.1 et seq.,
§ 480.2).*

SEPARATE OPINION.

ADAMS, J.

11. STATUTES — MOTOR CARRIER — HIGHWAYS — SAFETY — TRANS-
PORTATION FOR HIRE — LESSOR-LESSEE.

*The purpose of the motor carrier act is to promote safety and
conserve the use of the highways of the State and to super-
vise, regulate, and control the use of such highways by motor
carriers of passengers and property for hire upon and over
such highways, but the act does not cover the business of leas-
ing motor equipment to a lessee by a lessor who did not itself
transport passengers or property for hire or exercise control
over the lessee (CL 1961, § 475.1 et seq.).*

12. SAME—CONSTRUCTION—JURISDICTION—PUBLIC SERVICE COMMIS-
SION—MOTOR CARRIER SAFETY.

*Construing the motor carrier act narrowly, this Court held the
act confers jurisdiction on the public service commission only
as to regulation of vehicles for hire; thus, the act does not
confer power or authority upon the public service commission
to carry out or enforce the provisions of the motor carrier
safety act under which defendant was arrested for failure to
display his driver's logbook (CL 1948, § 475.1 et seq., § 480.2).*

13. SAME—PUBLIC SERVICE COMMISSION—PEACE OFFICERS—APPLICA-
TION OF STATUTE.

*Motor carrier act provision that inspectors appointed by the
public service commission shall have all powers conferred upon
peace officers, when considered in connection with this Court's
reasoning that many officers have been granted certain powers
within the purview of their respective duties which can be
said to be some part of the general powers of a peace officer,
leads to the conclusion that an inspector performing duties
under the motor carrier act is a peace officer and the title of
the act is adequate, enforcement being a necessary object
of the act, to embrace the provisions of the motor carrier
act as to inspectors and their powers as peace officers (CL
1948, § 475.1 et seq., § 479.13).*

DISSENTING OPINION.

KELLY and BLACK, JJ.

14. CONSTITUTIONAL LAW—CRIMINAL LAW—APPEAL AND ERROR—
QUESTIONS REVIEWABLE.

*Claim that prosecution of defendant for failure to display daily
logbook was barred by a provision of the 1908 Constitution
prohibiting a law from embracing more than the one object
expressed in its title cannot be raised by a dubious presenta-
tion before the Supreme Court where the constitutional ques-
tion was not raised in either the circuit court or the Court of
Appeals (Const 1908, art 5, § 21).*

Appeal from Court of Appeals, Division 2, Quinn,
P. J., and T. G. Kavanagh and Levin, JJ., affirming
Oakland, Moore (Arthur E.), J. Submitted March
5, 1969. (Calendar No. 7, Docket No. 52,041.)
Decided September 3, 1969.

11 Mich App. 213, reversed.

Richard E. Carey was convicted of resisting an officer in the discharge of his duty. Defendant appealed to the Court of Appeals. Affirmed. Defendant appeals. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *S. Jerome Bronson,* Prosecuting Attorney, and *Dennis Donohue,* Chief Appellate Counsel, for the people.

*George A. Jones,* for defendants.

T. M. KAVANAGH, J. On April 2, 1963, defendant, while driving a truck leased by a private company hauling its own products, was stopped by a motor carrier inspector employed by the Michigan public service commission. The inspector asked to examine defendant's driver's logbook (driving record). When defendant refused, he was told he was under arrest for failure to display his "driver's logbook to a peace officer upon demand."

In reply to defendant's question of "Who's going to arrest me," the inspector replied "I will." Defendant placed his truck in gear and drove away. The inspector gave chase and overtook defendant's vehicle and, with his red light oscillating and siren sounding, waved to defendant to "move over." Defendant disobeyed. The inspector then drove in front of the truck and slowed to a near stop. Defendant drove around him.

On April 6, 1963, at 2 a.m., the defendant was arrested in his home by an officer from the Plymouth police department who was accompanied by two inspectors employed by the public service commission, and transported to the Oakland county jail.

Defendant was arraigned, waived examination, and was bound over to circuit court on a charge of resisting and opposing an inspector of motor carriers for hire—hereafter referred to as "motor carrier inspector"—in attempting to arrest him on April 2, 1963, "for failure to display daily logbook" as required by PA 1937, No 314,[1] commonly known as the motor carrier safety act—hereafter referred to as the "safety act."

Defendant filed a motion to quash the summons and complaint for the reasons that the motor carrier inspector was not a "peace officer" within the meaning of the criminal statute—PA 1931, No 328, § 479 (CL 1948, § 750.479 [Stat Ann 1954 Rev § 28.747]); and that even if the inspector were a peace officer he had no right to arrest defendant under the circumstances because defendant had not committed a misdemeanor in the presence of the inspector. The motion to quash was denied by the trial court.

Defendant sought a directed verdict at the close of the people's testimony, for the reason that the motor carrier inspector was without authority to arrest persons not licensed by the public service commission and the testimony did not support the charge shown in the warrant and complaint. The trial court denied the motion. The jury returned a verdict of guilty. The Court of Appeals affirmed. 11 Mich App 213. Defendant is here on leave granted. 381 Mich 768.

The questions raised by defendant are:

(1) Whether motor carrier inspectors, employed by the public service commission, are peace officers

---

[1] CL 1948, §§ 480.1–480.5 (Stat Ann 1960 Rev §§ 9.1665[1]–9.1665[5]), repealed and superseded by PA 1963, No 181, as amended (MCLA §§ 480.11–480.19, Stat Ann 1968 Rev §§ 9.1666[1]–9.1666[9]).

as the term "peace officer" is used in PA 1937, No 314, § 2 (CL 1948, § 480.2)?

(2) If motor carrier inspectors employed by the public service commission were police officers, could they lawfully stop and detain by force the driver of a motor vehicle truck for the sole purpose of demanding the driver's daily logbook, even though they had no reason whatever to believe a crime had been committed?

(3) If motor carrier inspectors employed by the public service commission were police officers, could they lawfully compel a driver of a motor vehicle truck to involuntarily surrender his daily logbook (driving record) for the purpose of possibly furnishing information on which the driver could be charged with a crime?

(4) Whether the driving away of a motor vehicle and the disobedience of an inspector's signal to stop constitutes "resisting and opposing" in violation of the penal code—PA 1931, No 328, § 479?

(5) Did the complaint and warrant allege and did the evidence show that defendant violated the statute pursuant to which the arrest was attempted?

(6) Did the Court of Appeals err in holding that the case had been moot since October 28, 1965, because the conditions of probation had been completed and defendant discharged from probation on that date? (This latter issue appears only in a concurring opinion and is not dispositionally relevant.)

The crucial question is whether a public service commission inspector was a peace officer empowered pursuant to article 5, § 13 of the motor carrier act (CL 1948, § 479.13 [Stat Ann § 22.578]) to enforce all the general laws of this State, including the safety act.

It is argued by the people that it was the intent of the legislature to place the responsibility for the

enforcement of the safety act on the public service commission. More specifically, section 1a of the act read:

"The purpose of this act is to safeguard the persons and property of those upon and along the highways within this state, arising from the operation thereon, by persons physically unfitted or physically impaired from exhaustion or other causes, of motor trucks, tractors and trailers, and from the operation thereon of motor trucks, tractors and trailers without reasonably proper safety devices and appliances; and *the Michigan public service commission is hereby authorized and empowered to make such rules and regulations as are reasonably necessary to the accomplishment of this purpose.*" (Emphasis added.)    CL 1948, § 480.1a (Stat Ann 1960 Rev § 9.1665[1a]).

This argument fails to distinguish between the regulatory power which is clearly vested in the public service commission and the power to enforce the act. As to the latter power, section 2 of the act unequivocally entrusted the power to demand the display of the logbook only to a peace officer:

"*Said daily log or record shall be displayed by the operator or driver of the vehicle upon which the same is maintained, at any time upon demand of any peace officer of the state or any division thereof.* The failure to maintain said daily log or record upon each such motor truck or tractor, and to make the entries hereinbefore named, or to display the same or furnish copies thereof to the Michigan public service commission or to the department of labor and industry, as hereinbefore provided, shall be deemed to be a violation of this act by the owner or user of the vehicle in question." (Emphasis added.)    CL 1948, § 480.2 (Stat Ann 1960 Rev § 9.1665[2]).

The legislative designation of a "peace officer" in section 2 of the safety act is plain and unambiguous

and no interpretation or construction of this particular section is necessary. *Acme Messenger Service Co.* v. *Unemployment Compensation Commission* (1943), 306 Mich 704; *In re Chamberlain's Estate* (1941), 298 Mich 278; *Geraldine* v. *Miller* (1948), 322 Mich 85; *Knapp* v. *Palmer* (1949), 324 Mich 694; *Van Antwerp* v. *State* (1952), 334 Mich 593; *Mercy Hospital* v. *Crippled Children Commission* (1954), 340 Mich 404; *Bartkowiak* v. *Wayne County* (1954), 341 Mich 333; *Big Bear Markets of Michigan, Inc.,* v. *Liquor Control Commission* (1956), 345 Mich 569. The Court can only give full effect to the plain meaning of the term as used in the statute and cannot read into the law a requirement that the law-making body has seen fit to omit. *In re Hurd-Marvin Drain* (1951), 331 Mich 504; *Staiger* v. *Liquor Control Commission* (1953), 336 Mich 630.

Recognizing the plain meaning and the exclusive use of the term "peace officer" in section 2, we must consider whether an inspector employed by the public service commission was empowered under article 5, § 13 of the motor carrier act to act as a "peace officer" as that term has been generally defined.

Although the term "peace officer" has not been statutorily defined, it has been judicially construed. In *People* v. *Bissonette* (1950), 327 Mich 349, this Court stated (pp 356, 357):

"Peace officers have general authority to operate in a broader field. Their powers have not been specifically defined by the statute law of this State.

"'*Peace Officers.* This term is variously defined by statute in the different States; but generally it includes sheriffs and their deputies, constables, marshals, members of the police force of cities, and other officers whose duty is to enforce and preserve the public peace.

"'*Public Peace.* The peace or tranquility of the community in general; the good order and repose

of the people composing a State or municipality.'
Black's Law Dictionary (3d ed), p 1341.

" '*Peace Officer. Law.* A civil officer whose duty
it is to preserve the public peace, as a sheriff or
constable.' Webster's New International Dictionary
(2d ed), p 1798."

It is the people's position that by virtue of appointment pursuant to the motor carrier act, inspectors automatically become peace officers of this
State.

The motor carrier act, article 5, § 13, provides:

"The commission may use any and all available
legal and equitable remedies of a civil nature to enforce the provisions of this act or any lawful order,
rule or regulation made in pursuance thereof. *The
commission is empowered to employ and appoint
from time to time such experts, assistants, inspectors and other help as may be deemed necessary with
the aid of the enforcing agencies of this state, to enable it at all times properly to administer and enforce this act. The inspectors so appointed by the
commission shall have all the powers conferred upon
peace officers by the general laws of this state.* A
record shall be kept by the commission showing the
daily activities, violations found, and arrests made
as to each inspector. No employee of the commission shall ask or receive any fee from any person
for the taking of acknowledgments or any other service. It shall be the duty of the law enforcement department or agency of every division, branch or
commission of the state government, and of every
county and municipality within the state, to see that
the provisions of this act, and the orders, rules and
regulations of the commission thereunder are enforced; and *every peace officer shall arrest, on sight
or upon warrant, any person found violating or having violated, any provision of this act,* or any order,
rule or regulation of the commission; and it shall
be the duty of the attorney general of the state and

of the prosecuting attorneys of the counties of the state to prosecute all violations of this act, or any order, rule or regulation of the commission thereunder." (Emphasis added.)

The declared legislative purpose and policy in enacting the motor carrier act[2] was "to confer upon the [public service] commission the power and authority and to make it its duty to supervise and regulate the transportation of persons and property by motor vehicle *for hire* upon and over the public highways of this state." (Emphasis added.) See CL 1948, § 475.2 (Stat Ann 1969 Cum Supp § 22.532). A fair reading of the entire act discloses a legislative intent to restrict the scope and operation of the motor carrier act only to those motor vehicles which are "for hire." See *People* v. *Hertz Driveurself Stations, Inc.* (1953), 338 Mich 139.

The title[3] of the motor carrier act has for its basic purpose the supervision, regulation and control of motor vehicles "for hire," and repeatedly employs the restrictive terminology of "for hire" throughout the title. Consonant with this declared policy and manifest intent, as expressed both in the title and body of the act, the title additionally provides "for the enforcement of *this* act and [prescribes] penalties for *its* violation." This, of course, was an undisputably valid and proper exercise of the legislative power.

The legislature, however, went further than the purpose and title of the act when it attempted to create a new classification of peace officers by the following language of article 5, § 13 of the motor carrier act:

[2] PA 1933, No 254, as amended (CL 1948 and CLS 1961, §§ 475.1–479.20 [Stat Ann and Stat Ann 1969 Cum Supp §§ 22.531–22.585]).
[3] Amended by PA 1956, No 164, and PA 1957, No 173.

"The inspectors so appointed by the commission shall have all the powers conferred upon peace officers by the general laws of this state."

This provision, although admittedly within the legislative power, is constitutionally infirm because it is an object in addition to the singular object of the act and it is not expressed in the title of the act. Const 1908, art 5, § 21, mandates that "No law shall embrace more than one object."[4]

The main purpose of Const 1908, art 5, § 21, was to prevent the legislature from passing laws not fully understood and to avoid bringing into one bill subjects diverse in their nature and having no necessary connection. It was intended that the legislature, in passing law, should be fairly notified of its design and that the legislature and public might understand from the title that only provisions germane to the expressed object would be enacted. *MacLean* v. *State Board of Control for Vocational Education* (1940), 294 Mich 45, and cases cited therein.

The provision under consideration creates the type of evil which the Constitution specifically intended to avoid. Certainly, the creation of a new classification of "peace officers," as manifested by the clear and unambiguous language, is neither necessary nor consonant with the declared legislative purpose and policy of the motor carrier act. It is patently diverse in nature from the entire title and body of the act and it bears no necessary or rational connection to the supervision, regulation, and control of motor vehicles *for hire*. Nowhere in the title of the act is it even intimated that there exists, somewhere in the act, the legislative object to create a new classification of "peace officers" as that term has been construed by the Court. Yet, as the in-

---

[4] For current provision, see Const 1963, art 4, § 24.

stant case bears witness, the operation of this statute as it presently exists could reach any private conduct falling subject to the power of a peace officer. We do not question the legislature's ability under the police power to enact such a law, but we reject as constitutionally impermissible the method employed in article 5, § 13 of the motor carrier act. See *People* v. *Wohlford* (1924), 226 Mich 166; *Arnold* v. *Ogle Construction Company* (1952), 333 Mich 652; *People* v. *Hertz Driveurself Stations, Inc., supra; Knott* v. *City of Flint* (1961), 363 Mich 483; *Hall* v. *Calhoun County Board of Supervisors* (1964), 373 Mich 642; *Continental Motors Corporation* v. *Township of Muskegon* (1965), 376 Mich 170, and cases cited therein; *City of Gaylord* v. *Gaylord City Clerk* (1966), 378 Mich 273.

We hold the provision of article 5, § 13 of the motor carrier act which reads: "The inspectors so appointed by the commission shall have all the powers conferred upon peace officers by the general laws of this state," to be unconstitutional for the reason above stated.

We further hold that a public service commission inspector is not, and never was, a "peace officer" as that term has been generally defined. *Briggs* v. *Campbell, Wyant & Cannon Foundry Company* (1967), 379 Mich 160. It follows that the inspector had no authority, outside the ambit of the motor carrier act, to stop a private vehicle, or to demand display of a logbook, or to arrest the driver of a private vehicle.

The judgments of the trial court and the Court of Appeals are reversed.

T. E. BRENNAN, C. J., and DETHMERS, J., concurred with T. M. KAVANAGH, J.

Adams, J. (*concurring*). In *People* v. *Hertz Driveurself Stations, Inc.* (1953), 338 Mich 139, this Court held that the purpose of PA 1933, No 254, was "to promote safety and conserve the use of highways of the State and, therefore, to supervise, regulate and control the use of such highways by motor carriers of passengers or property *for hire* upon and over such highways." (Emphasis by the Court, p 145.) The Court concluded that the title was insufficient to cover a 1945 amendment* to the act that attempted to reach the business of owners of vehicles who were not carriers or transporters of property but who leased their vehicles to third parties over whom the lessors exercised no control whatsoever.

If the present case were one of first impression, in view of the broad sweep of the language of the first clause of the title to Act 254—"An act to promote safety upon and conserve the use of the public highways of the State;"—I would not construe the scope of the title as narrowly as the Court did in *People* v. *Hertz, supra*. Since this Court has held that the act confers jurisdiction on the public service commission only as to regulation of vehicles for hire, it must now be held that the act does not confer upon the public service commission any power or authority to carry out or enforce the provisions of PA 1937, No 314, under which the inspector was proceeding in his encounter with defendant.

I cannot agree, however, that the provision in PA 1933, No 254—"The inspectors so appointed by the commission shall have all the powers conferred upon peace officers by the general laws of this state"—is constitutionally infirm so that a public service commission inspector is not, and never was, a "peace officer" as that term has been generally defined.

---

* PA 1945, No 264.—Reporter.

This Court noted in *People* v. *Bissonette* (1950), 327 Mich 349: "By statute, many officers have been granted certain powers, within the purview of their respective duties, which can be said to be some part of the general powers of a peace officer." (p 354.) In *Bissonette,* numerous examples of such restricted powers are given (pp 354, 355). In this case the inspector was endeavoring to enforce the provisions of an act other than PA 1933, No 254, which made him a peace officer and which delineates the scope of his authority to act in such capacity. While not necessary to our decision here, it would appear to me that the inspector was a peace officer for the purpose of carrying out his duties under PA 1933, No 254, and that the title of that act is adequate—enforcement being a necessary part of the object of the act—to embrace the provisions of the act as to inspectors and as to their powers as peace officers.

I concur in reversal of the judgments of the trial court and the Court of Appeals for the reasons above given.

BLACK, J. *(dissenting).* The constitutional question, turning upon the claimed applicability in bar of defendant's prosecution of the first sentence appearing in Const 1908, art 5, § 21,* was not raised in either court below. For reasons often recited, it is not before this Court. And the "dubious" nature of its presentation (see *Taunt* v. *Moegle* [1956], 344 Mich 683, 686, quoting *Aircraft & Diesel Equipment Corp.* v. *Hirsch* [1947], 331 US 752, 763 [67 S Ct 1493, 91 L Ed 1796]) should preclude consideration of that question on motion of the Court.

---

* "No law shall embrace more than one object, which shall be expressed in its title." (This language has been continued in Const 1963, art 4, § 24.—REPORTER.)

I stand by the opinion of Division 2 (11 Mich App 213) and therefore vote to affirm.

Kelly, J., concurred with Black, J.

T. G. Kavanagh, J., did not sit.