THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JANICE PERRY, Defendant-Appellant.

(No. 59895;

First District (2nd Division)—March 18, 1975.

· James J. Doherty, Public Defender, of Chicago (Frederick F. Cohn and Ira Churgin, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Donald M. Devlin, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Defendant, Janice Perry, was charged in two complaints with battery (Ill. Rev. Stat. 1973, ch. 38, par. 12—3), and disorderly conduct (Chicago, Ill., Code (1973), ch. 193, par. 193.1). After a bench trial, defendant was found not guilty of disorderly conduct but guilty of battery. Defendant appeals from the finding of guilty on the charge of battery.

The facts underlying the instant appeal need only be briefly summarized. Defendant was a resident of the Henry Horner Project of the Chicago Housing Authority (CHA). Early on the evening of June 1, 1973, defendant and a group of men and women were playing baseball on the grounds of the Henry Horner Project. CHA rules prohibit the

playing of baseball on project grounds. Consequently, two security guards, Aaron Jones and Sherman Ballentine, employed by Wells Fargo, a private company, and by the CHA,[1] arrived to break up the game. Both Jones and Ballentine were dressed in uniforms similar to the Chicago Police except for Wells Fargo patches and badges.

Jones and Ballentine identified themselves as CHA security guards and persuaded the baseball players to disband. Although there is some dispute as to why, an argument then erupted between defendant and Jones and Ballentine. Jones and Ballentine then placed defendant under arrest for disorderly conduct and requested her to accompany them to the project's office. After defendant refused to go to the office, Ballentine endeavored to handcuff defendant. Defendant resisted, and a struggle ensued during which defendant admittedly kicked Jones.

Defendant was subsequently charged with battery and disorderly conduct. Defendant was acquitted of disorderly conduct but found guilty of battery. This appeal follows.

The sole issue raised is whether defendant's conduct was committed without legal justification. Specifically, defendant contends that Jones and Ballentine had no authority beyond that of a private citizen and thus, were not empowered to make an arrest for disorderly conduct, an ordinance violation. Consequently, their attempt to handcuff defendant was a battery itself which defendant was justified in resisting.

■■ Defendant was charged with the offense of battery. In relevant part, battery is defined as follows:

> "A person commits battery if he intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual  *  *  *." (Ill. Rev. Stat. 1973, ch. 38, par. 12—3.)

The burden is on the State to prove all essential elements of the crime, including that the battery was committed without legal justification. See *People v. Grieco*, 44 Ill.2d 407, 255 N.E.2d 897.

If Jones and Ballentine were, in fact, peace officers, they were justified in using all reasonable force, not including deadly force, to effect the arrest for disorderly conduct. (Ill. Rev. Stat. 1973, ch. 38, par. 7—5.) In that case, defendant would not have been justified in resisting the arrest, even if unlawful. (Ill. Rev. Stat. 1973, ch. 38, pars. 7—7, 31—1; *People v. Carroll*, 133 Ill.App.2d 78, 272 N.E.2d 822.) Consequently, the admitted kicking of Jones would not have been justified, and all essential elements of a battery would have been proven.

---

[1] The exact relationship between Jones, Ballentine, Wells Fargo and the CHA is unclear. It appears that Jones and Ballentine were paid by the CHA but supervised by Wells Fargo. In any event, both guards stated they were employed by both Wells Fargo and the CHA.

■■ If, however, Jones and Ballentine were merely private citizens and not peace officers, they would have no authority to use force to effect an arrest for disorderly conduct because they would have no authority to effect an arrest at all. For section 107—3 of the Code of Criminal Procedure specifically prohibits a private person from arresting another for an ordinance violation. (Ill. Rev. Stat. 1973, ch. 38, par. 107—3.) Since disorderly conduct is an ordinance violation,[2] Jones and Ballentine, as private citizens, would have had no authority to arrest defendant. Therefore, their attempt to handcuff defendant would have been a battery itself and consequently, defendant would have been justified in resisting the unlawful force. (Ill. Rev. Stat. 1973, ch. 38, par. 7—1.) In that case, the State would have failed to prove that defendant's conduct was without legal justification.[3]

Resolution of the instant appeal will thus turn on the status of Jones and Ballentine at the time of defendant's arrest. The State contends that Jones and Ballentine had the authority to arrest for an ordinance violation for either of two separate reasons.

First, the State points to the definition of "peace officer" as found in section 2—13 of the Criminal Code:

> " 'Peace officer' means any person who by virtue of his office or public employment is vested by law with a duty to maintain public order or to make arrests for offenses, whether that duty extends to all offenses or is limited to specific offenses." (Ill. Rev. Stat. 1973, ch. 38, par. 2—13.)

The State then notes that the Housing Authorities Act of 1934 (Ill. Rev. Stat. 1973, ch. 67½, pars. 1 et seq.), under which the CHA was created, imposes a duty on the CHA to protect its tenants and property. (Young v. Chicago Housing Authority, 350 Ill.App. 287, 112 N.E.2d 719.) To this end, the Housing Authorities Act granted to the CHA "all the powers

---

[2] Defendant was charged with disorderly conduct violating the municipal ordinance. There is also a State statute prohibiting disorderly conduct. (Ill. Rev. Stat. 1973, ch. 38, par. 26—1.) Although we note the apparent conflicts in this area of the law presented by overlapping State statutes and municipal ordinances, the State has neither raised nor argued the possible applicability of the State statute, consequently we do not reach the questions presented by such a conflict. Such conflicts can best be resolved by the legislature rather than the courts. Instead, we confine our views to only those situations where the arrest is for an ordinance violation.

[3] Although section 7—6 of the Code of Criminal Procedure (Ill. Rev. Stat. 1973, ch. 38, par. 7—6), basically provides that a private person in effecting a lawful arrest may use the same force as a peace officer may use, that section is limited to only those situations in which the law authorizes a private citizen to make an arrest at all. (S.H.A. (1961), Committee Comments, ch. 38, par. 7—6.) Since section 107—3 of the Code prohibits such an arrest for an ordinance violation, section 7—6 is inapplicable.

necessary or convenient to carry out and effectuate the purposes and provisions of this Act." (Ill. Rev. Stat. 1973, ch. 67½, par. 8.) The State thus concludes that Jones and Ballentine, employed by the CHA through Wells Fargo, were in "public employment" and "vested by law with a duty to maintain order," and consequently, were peace officers within the meaning of section 2—13.

■■ While the State's argument is certainly persuasive that the CHA has the authority to hire security guards, we cannot agree that by virtue of that employment, they become peace officers within the meaning of section 2—13. For the State's argument is premised on two grounds, (1) public employment, and (2) a limited duty to maintain order, that were rejected in *Arrington v. City of Chicago*, 45 Ill.2d 316, 259 N.E.2d 22. In *Arrington*, jail guards employed by the city of Chicago at the House of Correction attacked a State statute claiming that it unreasonably discriminated between peace officers and themselves. The court rejected such an analysis, stating:

> "[A peace officer] has the duty to maintain public order wherever he may be; his duties are not confined to a specific time and place as are those of a prison guard * * *.
>
> Jail guards are not peace officers, and they have no general powers to arrest or maintain order." (45 Ill.2d 316, 318.)

Thus, despite the fact that the jail guards were publicly employed the court concluded that because of their limited duty to maintain order, they were not peace officers within the meaning of section 2—13. Certainly, private security guards, even though employed by a municipal corporation, have no greater claim to peace officer status. See *Doherty v. Lester* (1957), 4 Misc.2d 741, 159 N.Y.S.2d 219; *In re License of Niehoff* (Pa. 1956), 9 D. & C.2d 410.

While we recognize that the court in *Arrington* was merely considering the narrow question of whether the State statute drew an unreasonable distinction between peace officers and jail guards, we find its emphasis on the general duty of a peace officer to maintain public order at all times an important consideration of any determination of peace officer status. In this regard, we note that although *Arrington* is the only occasion an Illinois court has had to consider the scope of the term "peace officer," other courts have reached a similar result based on similar considerations. See *Leach v. Penn-Mar Merchants Association* (1973), 18 Md.App. 603, 308 A.2d 446; *Vandiver v. Carlin* (1962), 217 Ga. 515, 123 S.E.2d 548; *Board of Commissioners of Peace Officers' Annuity and Benefit Fund v. Clay* (1958), 214 Ga. 70, 102 S.E.2d 575; *People v. Carey* (1969), 382 Mich. 285, 170 N.W.2d 145.

We conclude that the term "peace officer" as defined in section 2—13

and as interpreted by the supreme court in *Arrington* includes only those individuals who are required by their employment to give full time to the preservation of public order. In so deciding we do not mean to suggest that the definition of a peace officer is absolutely rigid and cannot be expanded by the legislature. Other states have specifically expanded that definition to include such law enforcement personnel as university police, welfare investigators, jail guards, hospital police, airport police, rapid-transit police, bridge and tunnel police, and housing authority police. (See N.Y. Crim. Proc. Law, par. 1.20 (33) (McKinney 1971); West Cal. Penal Code, pars. 830 to 830.35.) However, if such an expansion of the statutory definition is to occur in Illinois, that expansion should come from the legislature, not from the courts.

The State's second argument is that even if Jones and Ballentine were not peace officers within the meaning of section 2—13 at the time of defendant's arrest, they were more than private citizens. The State argues that Jones and Ballentine were special policemen within the meaning of chapter 173 of the Chicago Municipal Code. That chapter provides:

> "The term 'special policeman' is hereby defined as any person who for hire or reward, shall guard or protect any building, structure, premises, person, or property within the city; provided, however, that this shall not apply to regularly appointed police officers of the city or to any sheriff or deputy of the county.
>
>      \*     \*     \*
>
> An application of any person showing the necessity of appointment as a special policeman shall be made to the superintendent of police. The superintendent of police shall have power to appoint and swear in any number of special policemen to do special duty at any fixed place in the city, or at any of the necessary places for the protection of persons, passengers, and property being transported in interstate or intrastate commerce within the city, at the expense and charge of the applicant.
>
>      \*     \*     \*
>
> The superintendent of police shall issue a special certificate of appointment to each person appointed as a special policeman, which certificate shall expire one year from the date of its issuance. The superintendent of police shall have power to renew any such appointment for a period of one year. He shall keep a correct list of all persons appointed as special policemen.
>
>      \*     \*     \*
>
> Every special policeman shall wear a suitable badge, not in the form of a star, which shall be issued to him by the superintendent of police. Every special policeman shall deposit with the superin-

tendent of police the sum of ten dollars for such badge. Said badge shall be worn by the special policeman on the outside of his outer coat while engaged in the performance of police duty. * * * It shall be unlawful for any special policeman to wear or display any badge except the one issued by the superintendent of police. It shall be unlawful for any special policeman to wear any insignia, cap, device, button, or uniform unless the same shall first have been approved by the superintendent of police.

* * *

Every special policeman shall conform to and be subject to all the rules and regulations governing police officers of the city, and to such additional rules and regulations as the superintendent of police may make concerning special policemen. Special policemen shall possess the powers of the regular police patrol at the places for which they are respectively appointed or in the line of duty for which they are engaged."

The State argues that Jones and Ballentine clearly come within the definition of "special policeman," and as such, had the powers of the regular police patrol while on duty at the housing project. Consequently, Jones and Ballentine had the authority to arrest even for an ordinance violation and hence defendant's conduct was without legal justification. Essentially, the State argues that even if security guards are not peace officers, these security guards were special policemen. Such an argument presents a threshold question of whether special policemen possess authority greater than that of a private citizen so that they may make an arrest for an ordinance violation.

Defendant argues that since the legislature has established only two classes of individuals for purposes of making an arrest, namely, peace officers (Ill. Rev. Stat. 1973, ch. 38, par. 107—2), and private persons (Ill. Rev. Stat. 1973, ch. 38, par. 107—3), the city of Chicago is bound by those classifications. And since it has already been determined that peace officers must be full-time law-enforcement personnel, the city's attempt to create a part-time peace officer is invalid. However, defendant construes the city's power too narrowly.

■■ For while municipal ordinances must be in harmony with the general laws of the State, and in case of conflict, the ordinance must give way, the mere fact that the State has legislated upon a subject does not necessarily deprive a city of power to deal with the subject by ordinance. Police regulations enacted by a city may differ from those of the State upon the same subject, provided they are not inconsistent therewith. (*Brown v. City of Chicago*, 42 Ill.2d 501, 250 N.E.2d 129.) In the instant case, the city has not given private persons greater power than that

allowed by the State statute. (Ill. Rev. Stat. 1973, ch. 38, par. 107—3.) Nor has the city attempted to create part-time peace officers. The city has merely chosen to supplement its regular police force. Such an ordinance is not inconsistent with the State statute, but clearly supplementary. In effect, the city has decided to create a third class of individuals, a class between peace officers and private persons in terms of authority.

Moreover, it is eminently reasonable that the city have this discretion. It is largely the obligation of the city to protect the people and property within its boundaries. To this end the city has enacted municipal ordinances and has created a regular police force to enforce those ordinances. However, a municipality as large and complex as Chicago has police needs peculiar to itself. (*Biffer v. City of Chicago*, 278 Ill. 562, 116 N.E. 182.) If, to fulfill its obligation to protect its citizens, the city has chosen to deputize certain individuals to perform certain limited functions in order to improve the safety of all citizens, such a determination can hardly be said to be unreasonable. It is clear that the city has the authority and duty to take all reasonable steps to safeguard its citizens and property and enforce its own laws. (*People ex rel. Schlaeger v. Illinois Central R.R. Co.*, 396 Ill. 200, 71 N.E.2d 39.) Such individuals, properly qualified pursuant to the ordinance, would insure that the citizens of Chicago enjoy the safety that the city authorities are obligated to provide.

Finally, it must be noted that such individuals provide an essential function for such public institutions as the CHA. As noted above, the CHA is impressed with a duty to protect its tenants and property. The ever-present need for added security at such institutions could seriously overtax the regular police force if the regular police force was required to provide the needed vigilance. Chapter 173 of the municipal code allows public institutions to acquire that required degree of security and at the same time free the regular police force for duty in other areas of the city. As such, chapter 173 is a valid option, open to the city, to use in its discretion, to aid the CHA and other authorities in order that both may provide the degree of safety required by law and demanded by the public.

■■ We emphasize that special policemen are not peace officers as defined in section 2—13. They do, however, as outlined in the ordinance possess the powers of the regular police patrol at the places for which they are appointed. It would be inappropriate at this time to attempt to delineate the differences in authority between a peace officer and a special policeman. (See *People v. Rivera* (1973), 72 Misc.2d 985, 341 N.Y.S. 2d 157; *Velez v. Sugarman* (1973), 75 Misc.2d 746, 349 N.Y.S.2d 53.) Suffice it to say that special policemen while on duty and while within the limited area of their jurisdiction possess the power and duty to make

arrests and restrain and detain persons, even for ordinance violations. See *Velez v. Sugarman, supra.*

However, the validity of chapter 173 is of no avail to the State in the instant case. For while the State correctly points to the authority possessed by a special policeman, the State overlooks the fact that at trial there was a total lack of proof that Jones or Ballentine were, in fact, special policemen.

At trial, the only testimony presented concerning the authority of Jones and Ballentine was that both were employed by Wells Fargo and, in turn, by the CHA. There is not one iota of testimony that Jones or Ballentine were, in fact, special policemen. There was no proof that these security guards possessed the certificate of appointment or the special badge as outlined in the ordinance. (Chicago, Ill., Code (1973), ch. 173, pars. 173—7, 173—9.) Nor was there any evidence that these security guards were appointed to the Henry Horner Project or to the CHA generally. (Chicago, Ill., Code (1973), ch. 173, par. 173—3.) Indeed, there was testimony that Jones and Ballentine wore Wells Fargo badges rather than the special badge issued by the superintendent of police.

■■ From the outset of the trial, defendant challenged the authority of Jones and Ballentine to make an arrest for disorderly conduct. Thus, it was incumbent upon the State to prove that these guards had authority greater than that of private citizens.

We cannot accept the State's bare allegation that since these guards were employed by the CHA, they must have been special policemen within the meaning of chapter 173. It is a matter of common knowledge that there are a great many private firms engaged in the security business. Not every member of that profession is by virtue of that employment, even if by a public institution, a special policeman. Chapter 173 has wisely set out certain requirements that must be met before the superintendent of police can issue a certificate of appointment. Those requirements will insure that only those who are properly qualified will possess the authority of that important and sensitive position. Absent a showing that an individual possesses a higher status, the law must presume that that individual possesses only the authority of a private individual.

The State argues that to require actual proof of Jones' and Ballentine's status as special policemen would impose an intolerable burden on the State. However, the State cannot dispense with essential elements of a crime merely because proof of that element would require additional effort. The State is required to prove every element of the offense charged, regardless of the effort involved. Moreover, in the instant case, the State could have satisfied this element by merely presenting the certificate of appointment, hardly an intolerable burden.

■■ In the instant case, Jones and Ballentine were only proven to be security guards employed by the CHA. As such, they were neither peace officers nor special policemen but rather occupied the same status as private individuals and were not empowered to arrest for an ordinance violation. Therefore, defendant was entitled to resist their attempt to handcuff her. Since her conduct was justified, the State failed to prove that her conduct was without legal justification.

Accordingly, the judgment of the circuit court is reversed.

Reversed.

LEIGHTON and HAYES, JJ., concur.