THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN M. NORWICK, Defendant-Appellant.

Third District    Nos. 3—93—0330, 3—93—0332 cons.

Opinion filed May 5, 1994.

Phillip A. Casey, of Steger, and Stephen Yoder, of Bloomington, for appellant.

Clarke Erickson, State's Attorney, of Kankakee (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LYTTON delivered the opinion of the court:

Defendant, John M. Norwick, was convicted of the offenses of driving under the influence of alcohol (Ill. Rev. Stat. 1991, ch. 95$^1$/$_2$, par. 11—501(a)(1)) and unlawful use of weapons (Ill. Rev. Stat. 1991, ch. 38, par. 24—1(a)(4)). He was assessed fines for both offenses and sentenced to one year of court supervision for unlawful use of weapons. Defendant appeals both convictions.

The issues before us are (1) whether defendant's status as an auxiliary policeman exempted him from prosecution for the unlawful use of weapons offense; and (2) whether the State's evidence was sufficient to prove beyond a reasonable doubt that defendant drove or was in physical control of his vehicle while intoxicated. Having considered the parties' arguments and the record before us, we now affirm both convictions.

According to the record on appeal, Officer Berziky of the Bourbonnais police department testified that he was dispatched to a field behind 355 Barrington Lane at 1:46 a.m. on January 10, 1992, to check on a vehicle driving around the field with its lights flashing. Berziky and fellow officer James Phelps proceeded to Barrington Lane and walked into the field. Using a spotlight, they discovered defendant's truck lodged in a ditch. Although he had patrolled the area about 10 times during the night, Berziky stated that he had not seen the truck before and could not say how long it had been in the ditch.

As the officers approached, defendant got out of the truck carrying a can of beer. Berziky testified that defendant gave the officers permission to search the vehicle. Berziky's search revealed that the hood of the truck was warm to the touch, the keys were in the ignition, and a loaded revolver and a six-pack of beer with one missing were inside. Berziky observed that defendant's speech was slurred, he smelled of alcohol, and he had poor coordination. Berziky placed defendant under arrest for unlawful use of weapons and patted him down. His pat-down search yielded a loaded 9mm handgun. Berziky subsequently cited defendant for driving under the influence of alcohol.

Officer Phelps also testified for the State. He too testified that he had patrolled Barrington Lane several times during the night of January 9-10, but had not observed defendant driving around the field and did not know how long the truck had been in the ditch.

In his defense, defendant testified that he was employed by the Village of Manteno as an auxiliary policeman. Defendant stated that on January 9, 1992, he drank three 12-ounce beers with a friend in Limestone during the afternoon. He was driving to his home in Bourbonnais alone around 11:25 p.m., when he stopped at a gas station and picked up two six-packs of beer. Within three blocks of his home, defendant decided to test his four-wheel drive and newly installed off-road lighting system. Defendant testified that he entered the field at Barrington Lane and then had trouble getting the truck out of the muddy ditch. He said that he hit a large culvert around 11:45 p.m. and thereafter could not dislodge the truck.

Defendant said that he just listened to the radio and drank about seven beers in the disabled vehicle before deciding to walk home. When he got out, he saw the police officers approaching. While he talked to Phelps, Berziky searched the truck. Defendant testified that he volunteered that he was carrying a second weapon when Berziky found the revolver in the truck.

At the conclusion of the evidence, the court found defendant guilty of driving under the influence of alcohol and unlawful use of weapons and entered convictions.

Defendant argues that he is exempt from prosecution for carrying a concealed revolver in his vehicle (Ill. Rev. Stat. 1991, ch. 38, par. 24—1(a)(4)) by virtue of his employment as an auxiliary policeman. A "peace officer" is exempt from prosecution under section 24—1(a)(4) of the Criminal Code of 1961. (Ill. Rev. Stat. 1991, ch. 38, par. 24—2(a)(1).) By definition, a "peace officer" is "any person who by virtue of his office or public employment is vested by law with a duty to maintain public order or to make arrests for offenses, whether that duty extends to all offenses or is limited to specific offenses." (Ill. Rev. Stat. 1991, ch. 38, par. 2—13.) Defendant's argument presumes that an auxiliary policeman is a "peace officer."

The State argues that, unlike regular policemen, an auxiliary policeman is a "peace officer" only when he is on duty. When he is not on duty, the auxiliary policeman is a private citizen, and the exemption allowing peace officers to carry concealed firearms does not apply. Defendant must establish his claim to the exemption by a preponderance of the evidence (*People v. Spain* (1980), 91 Ill. App. 3d 900, 415 N.E.2d 456), but defendant produced no evidence in this case that he was on duty. Thus, the State concludes, defendant's conviction for unlawful use of weapons should be affirmed.

We begin our consideration of the argument of the parties with an examination of the case of *People v. Perry* (1975), 27 Ill. App. 3d 230, 327 N.E.2d 167. In *Perry*, the court held that security guards were not justified in using force to effectuate an arrest in absence of proof that they qualified as "special policemen" under the Chicago Municipal Code. Although "special policemen" are not "peace officers" as defined in section 2—13 of the Criminal Code, the court specifically declined to differentiate between the authority of a peace officer and that of a special policeman. However, because the State failed to produce any proof that the security guards in that case had the required certificate of appointment or the special badge making them "special policemen" under the Chicago Municipal Code, defendant Perry was entitled to resist the guards' attempt to handcuff her, and her conviction was reversed. *Perry*, 27 Ill. App. 3d at 239.

In this case, the Criminal Code must be read *in pari materia* with the Illinois Municipal Code to determine whether an "auxiliary policeman" is a "peace officer" for purposes of the exemption provided by section 24—2(a)(1) of the Criminal Code. The Illinois Municipal Code describes the duties and limitations of auxiliary policemen as follows:

"[A]uxiliary policemen shall not supplement members of the regular police department of any municipality in the performance of their assigned and normal duties, except as otherwise provided herein. Such auxiliary police members shall only be assigned to perform the following duties in a municipality: To aid or direct traffic within the municipality, to aid in control of natural or man made disasters, to aid in case of civil disorder as directed by the Chief of Police, provided, that in cases which render it impractical for members of the regular police department to perform the normal and regular police duties, the Chief of Police of the regular police department is hereby authorized to assign auxiliary policemen to perform such normal and regular police duties. Identification symbols worn by such auxiliary policemen shall be different and distinct from those used by members of the regular police department. *** *Such auxiliary police officers shall not carry firearms, except with the permission of the Chief of Police, and while in uniform and in the performance of their duties.* Such auxiliary police *when on duty* shall also be conservators of the peace and shall have the powers as specified in Section 3—9—4 of this Code." (Emphasis added.) Ill. Rev. Stat. 1991, ch. 24, par. 3—6—5.

Here, defendant does not claim he was on duty as an auxiliary policeman or otherwise qualified as a conservator of the peace at the time of his arrest.

■ Auxiliary policemen have the power to maintain public order or make arrests for offenses as "peace officers" only while on duty and when authorized to do so by the municipality's chief of police. Off-duty auxiliary policemen are thus relegated to the status of private citizens for purposes of the exemption in section 24—2(a)(1). In this case, the defendant testified only that he was employed as an auxiliary policeman. There is no evidence that he was in uniform, on duty, or authorized by the chief of police to carry a revolver. Since defendant failed to come forward with any proof that he was vested with the powers of a "peace officer" at the time of his arrest, we hold that the trial court properly ruled that defendant was not entitled to the exemption. Accordingly, we affirm defendant's conviction for unlawful use of weapons.

Next, defendant contends that the State's evidence failed to prove

that he was driving the vehicle while intoxicated or that he was in physical control of his vehicle when he became intoxicated. Defendant correctly states that the prosecution was required to prove: (1) that he drove or was in actual physical control of a motor vehicle in the State of Illinois; and (2) that he was under the influence of alcohol. (Ill. Rev. Stat. 1991, ch. 95¹/₂, par. 11—501(a)(1).) Defendant admits that he was the only person driving the vehicle during the evening in question, but theorizes, based on his own testimony, that he had not drunk enough beer before his truck got stuck in the ditch to have been intoxicated. Thereafter, defendant's theory continues, he does not deny that he became intoxicated by drinking seven beers between 11:45 p.m. and 1:46 a.m., but that the truck was inoperable and not within his physical control during that period. Since his intoxication was not coincident with any proven period of his operation or physical control of the vehicle, defendant concludes he cannot be guilty of the driving offense. We do not agree.

It is axiomatic that it is not the duty of the appellate court to reweigh the evidence, but to view the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could find that the elements of the offense were proved sufficient to convict. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.) Viewed in that light, we hold that the trial court could have found that defendant was, in fact, intoxicated while in physical control of his vehicle.

■ The trial judge is not required to believe a defendant's testimony as to how he came to be drunk while parked in a ditch. (*People v. Cummings* (1988), 176 Ill. App. 3d 293, 530 N.E.2d 672.) In this case, defendant's theory is at odds with the State's circumstantial evidence and reasonable inferences therefrom. First, defendant's testimony that he remained in the truck drinking beer for two hours, while stuck in a ditch within three blocks of his home, was suspect. The key remained in the ignition, and the hood was still warm to the touch when the officers arrived on the scene. Given that it was the middle of the night in mid-January in a field in central Illinois, it is not unreasonable to infer that the engine had been running more recently than defendant testified.

Second, both officers testified that they had been patrolling the area several times during the night and had not observed the truck prior to receiving the report at 1:46 a.m. of a vehicle driving around the field. It is not unreasonable to infer that the officers would have seen defendant's truck during their patrol at some point before 1:46 a.m. if it had become lodged in the ditch some two hours earlier.

Third, defendant's testimony about his drinking seven beers

inside the truck after it became mired in the ditch is improbable, particularly since evidence gathered at the scene accounted for only one open can of beer.

Defendant admits, in effect, that he was in physical control of the vehicle and that he was under the influence of alcohol, but denies that his conduct and his condition were contemporaneous. However, the State's circumstantial evidence belies defendant's theory. Considering defendant's admissions, the reasonable inferences from undisputed evidence, and the trial court's resolution of inconsistencies in the evidence in favor of the prosecution, we find the evidence sufficient to support defendant's conviction for driving while under the influence of alcohol.

The judgment of the circuit court of Kankakee County is affirmed.

Affirmed.

BARRY and STOUDER, JJ., concur.