THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. VICTORIA A. SAMBO *et al.*, Defendants-Appellants.

Second District Nos. 2—89—0192, 2—89—0193 cons.

Opinion filed May 3, 1990.

576

Joseph N. DiNatale, of DiNatale & Montemurro, of River Forest, for appellants.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE INGLIS delivered the opinion of the court:

Defendants, Victoria and Raymundo Sambo, were charged by complaint with battery (Ill. Rev. Stat. 1987, ch. 38, par. 12—3(a)(1)). Following a jury trial, defendants were found guilty and were sentenced to one year's probation, counseling, and costs in the amount of $418 each. On appeal, defendants contend that: (1) they were not proved guilty beyond a reasonable doubt; (2) the jury instructions were improper; (3) they were denied a fair trial by the cumulative effect of errors during trial, including improper opening and closing arguments, hearsay evidence and opinion testimony; (4) the trial court improperly appointed counsel to represent their minor daughter's interests; and (5) public policy, based on the right to privacy, militates against the guilty verdicts. In addition, defendant Victoria Sambo also alleges that she was denied the effective assistance of counsel because her attorney was burdened with a conflict of interest at trial. We affirm.

The following facts were adduced at trial. The State's first witness, Leon Schomer, testified that he was a neighbor of defendants and saw defendant Raymundo Sambo on May 14, 1988, at approximately 9 p.m. Schomer stated that Mr. Sambo rang the doorbell and asked him where Ellaine Sambo, defendant's daughter, and Schomer's daughter were. Schomer did not know where Ellaine was. Schomer noticed that Mr. Sambo was very nervous, was smoking cigarettes, and had alcohol on his breath. Mr. Sambo told Schomer that he would kill Ellaine's boyfriend if he touched Ellaine and that he would "take care of Ellaine."

Mr. Sambo left the Schomer residence and returned approximately

15 to 20 minutes later. Schomer stated that Sambo's demeanor was the same and that he was concerned about "teen-agers and sex" and that he wanted to straighten out his daughter. Sambo left shortly thereafter and returned again to the Schomer residence at approximately 10 p.m. However, he left after he was told that his daughter was not at the Schomer residence.

The alleged victim, Ellaine Sambo, testified that she was the 16-year-old daughter of defendants. Ellaine stated that she left her house at 8 p.m. on May 14, 1988, without her parents' permission, to visit a local dance club with her boyfriend. She stated that she returned home at approximately 11 p.m. and told her mother that she had been at Doc Weed's. Both Ellaine and her mother sat down on the sofa and began to discuss what had occurred that evening. Shortly thereafter, Ellaine heard her father in the garage and tried to run out of the house. Ellaine stated that she fell down on the stairs, got up and then fell into the front door, hitting her head on the doorknob. After a struggle with her parents, Ellaine eventually calmed down. She stated that neither of her parents had struck or kicked her during the incident.

Ellaine further testified that she went to school the following Monday morning (May 16, 1988) and spoke with the school counselor, Kara Egger. Ellaine stated that she told Egger that both of her parents hit her repeatedly on the night in question, finally stopping at approximately 5 a.m. In addition, she also told Egger that her father had dragged her down the stairs.

Ellaine also stated that she told substantially the same story to the school nurse, Judith Bush, as she did to the counselor. She also told Nurse Bush that her parents hit her with a plastic baseball bat that night.

Furthermore, Ellaine testified that she may have told Officer Michael Campo of the Darien police department that her parents repeatedly hit her in the face, back, hip, and buttocks with a plastic baseball bat on the night in question.

Ellaine also testified that she met with Waverle Grinden, a Department of Children and Family Services (DCFS) worker, on May 16, 1988, and recited a similar story concerning the beating. Furthermore, Ellaine told Officer Edward Vaughan of the Darien police department that she was unable to tolerate the verbal abuse and wanted to be taken out of her home and placed with a relative.

On cross-examination, Ellaine stated that she lied to the police and school officials about the alleged beating because she was mad at her parents. Ellaine also stated that she did not receive any medical treatment for her injuries.

Kara Egger, a counselor at Downers Grove South High School, testified that she saw Ellaine at approximately 7:50 a.m. on May 16, 1988. Egger stated that Ellaine was crying and was "upset, very distraught." Egger testified, over defense counsel's hearsay objections, that Ellaine told her that both defendants took turns hitting Ellaine with a plastic baseball bat and a belt and that both had kicked her. In addition, Ellaine stated that her father tried to pull out her teeth, threw liquor in her eyes, and told her that he was going to visit her at school on Monday and, if she was with Jim (her boyfriend), he would "kill the both of them by knocking their heads together and taking out their intestines or stomach." Egger stated that she took Ellaine to see the school nurse and then waited for the police to arrive.

Egger further testified that she saw Ellaine "almost every single day until the end of school." Ellaine would continuously ask Egger for assistance in getting her out of her parents' house. Ellaine also agreed to allow Egger to make an audio tape recording of one of the conversations. The tape was played to the jury. On the tape, Ellaine stated that her parents tried to get her to change her story, but that everything she told the police, social workers, and Egger was true. Ellaine told Egger that her parents beat her with a plastic bat, a belt, and their hands and that they threatened to kill her if she ever spoke to her boyfriend again. Ellaine also stated that she was making the tape of her own free will.

Judith Bush, the nurse at Downers Grove South High School, testified that she examined Ellaine on May 16, 1988, and observed bruises on her neck, face, upper arm, leg, and buttock. In addition, Nurse Bush noted that Ellaine's left eye was swollen, along with one of her fingers. Ellaine told Nurse Bush that the injuries were the result of being hit with a plastic baseball bat and a belt. It was Nurse Bush's opinion that the injuries received were consistent with what Ellaine told her had occurred.

Sergeant Brian Pabst of the Downers Grove police department testified that he observed Ellaine at approximately 10 a.m. on May 16, 1988, and noted that she was "extremely emotional" and "very upset." He also noticed several bruises and swelling on her body. Ellaine told Sergeant Pabst that the injuries were the result of a beating by her parents. Sergeant Pabst stated that he then notified the Darien police department because the alleged crime had occurred in Darien.

Officer Michael Campo of the Darien police department testified that he went to Downers Grove High School on May 16, 1988, to pick up Ellaine and transport her to the Darien police station. Officer Campo stated that he interviewed Ellaine and was told that her par-

ents had struck her with a plastic baseball bat and fists for approximately 5½ hours on May 14, 1988. Ellaine stated that her parents "weren't going to talk, they were going to hit." Ellaine repeated the same story to Officer Campo a total of four times during the interview.

Officer Edward Vaugahn of the Darien police department testified that he received a phone call from Ellaine on May 27, 1988, in which Ellaine told him that "[d]uring that time since her father had been arrested, her father and mother, she had been locked in her room, yelled at constantly, was prohibited from seeing or speaking to any of her friends, was kept apart from her sister and basically just locked up any time other than her being at school."

Detective David Skala of the Darien police department testified that he met with Ellaine on June 19, 1988, and was told that Ellaine was "experiencing harassment at home." In addition, her father told her to tell everyone that she lied about the events which occurred on May 14, 1988.

Following Detective Skala's testimony, the State rested, and defendants called Ellaine to testify again. Ellaine testified that she was suffering from a rash on her body on May 14, 1988, and was being treated with Benadryl. Ellaine stated that the rash itched and she would scratch it, with the scratch marks being noticeable on May 16, 1988.

After Ellaine testified, defendants rested. Following closing arguments, defendants made an oral motion for a directed verdict, which was denied. The jury returned a verdict of guilty for both defendants on the offense of battery. The court entered judgment on the verdicts, and subsequently sentenced defendants to one year's probation. Defendants' motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial, was denied, and this appeal followed.

On appeal, defendants first contend that the evidence presented at trial did not prove them guilty beyond a reasonable doubt. Defendants argue that Ellaine was not struck on May 14, 1988, but instead received her injuries as the result of a fall. Defendants also argue that, assuming *arguendo* that Ellaine was struck, the striking was justified as being within reasonable limits of parental discipline.

Defendants primarily rely on *People v. Perry* (1975), 27 Ill. App. 3d 230, and *People v. Ball* (1974), 58 Ill. 2d 36, to support their argument that they were not proved guilty beyond a reasonable doubt. In *Perry*, the defendant was convicted of battery for kicking a security guard employed by a private company. The appellate court reversed, holding that the defendant's conduct was justified in that she was entitled to resist the security guard's attempt to handcuff her. (*Perry*, 27

Ill. App. 3d at 239.) The court concluded that the security guard was not a peace officer, as defined by statute, and thus was not empowered to arrest the defendant for violating an ordinance. (27 Ill. App. 3d at 238-39.) The court noted that since the defendant's conduct was justified, the State had failed to prove that her conduct was without legal justification. 27 Ill. App. 3d at 239.

Furthermore, in *Ball*, the defendant, a school teacher, was convicted of battery for using corporal punishment on a sixth-grade student. The trial court determined that the teacher's use of corporal punishment went beyond what was "just and reasonable" and actually amounted to a battery. Our supreme court agreed, holding that the trial court properly used a "reasonableness" standard to determine whether the corporal punishment administered was without legal justification. (*Ball*, 58 Ill. 2d at 40.) The supreme court noted that teachers stand *in loco parentis* in matters of school discipline and, as such, should be subject to the same reasonableness standard which is applicable to parents in disciplining their children. 58 Ill. 2d at 40.

We disagree with defendants' contention that they were not proved guilty beyond a reasonable doubt. The evidence at trial was conflicting as to whether a battery had actually occurred. Ellaine, defendants' daughter, testified that she was not battered but instead hurt herself during a fall. However, the school nurse and counselor, along with two police officers, testified that they observed Ellaine's injuries and were told that the injuries were the result of a beating by defendants. Where the evidence is conflicting, this court will not substitute its judgment for that of the trier of fact. (*People v. Jaffe* (1986), 145 Ill. App. 3d 840, 846-47.) As *Jaffe* stated: "A conflict in the evidence does not establish a reasonable doubt, and a jury verdict based on substantial and credible evidence is not rendered reversible by the fact that other evidence was introduced which might, if believed, have resulted in a different verdict. [Citation.] Only where the record leaves the reviewing court with a grave and substantial doubt of guilt should the conviction be reversed." (*Jaffe*, 145 Ill. App. 3d at 847. See also *People v. Dougard* (1959), 16 Ill. 2d 603, 607.) We do not believe that there is a "grave and substantial doubt" of defendants' guilt in this case and decline defendants' invitation to substitute our judgment for that of the trier of fact.

We also disagree with defendants' assertion that they were not proved guilty beyond a reasonable doubt because the conduct was legally justified as being within the reasonable limits of parental discipline. The evidence presented allowed the jury to find that defendants hit Ellaine with their hands, a plastic baseball bat, and a belt, kicked

her, threw liquor in her face, and pulled her hair. This conduct, when reviewed under the *Ball* reasonableness standard, supports the conclusion that the beating was not justified as being a reasonable exercise of parental discipline. As such, we believe that defendants were proved guilty beyond a reasonable doubt.

Defendants next contend that the trial court improperly instructed the jury with respect to the essential elements of battery. In particular, defendants argue that the jury was not instructed as to the mental state of "knowingly," nor was it instructed that the conduct was "without legal justification."

The State contends that defendants have waived their claim by failing to object at trial to the instructions given and failing to tender alternative instructions. We agree.

■ In general, a defendant waives any error contained in a jury instruction by failing to object to the alleged erroneous instruction or by not offering an alternative instruction at trial. (*People v. Reddick* (1988), 123 Ill. 2d 184, 198; *People v. Roberts* (1979), 75 Ill. 2d 1, 10-11.) However, Illinois Supreme Court Rule 451(c) (107 Ill. 2d R. 451(c)) provides that substantial defects in jury instructions in criminal cases may be considered, even absent an objection at trial, if the interests of justice so require. (See *People v. Morrison* (1987), 162 Ill. App. 3d 299, 301.) This exception is utilized to correct grave errors or to correct errors in cases in which fundamental fairness requires that the jury be properly instructed. *Reddick*, 123 Ill. 2d at 198.

■ We do not believe that the present case involves grave error in the jury instruction. As to defendants' first contention, we note that the battery statute indicates that the *mens rea* for the offense is "intentionally or knowingly." (Ill. Rev. Stat. 1987, ch. 38, par. 12—3(a).) In the case at bar, the jury was instructed that defendants must have "intentionally and by any means" caused bodily harm. As such, defendants' contention is without merit.

■ Defendants' second contention concerns the failure to instruct the jury as to the "lack of legal justification." The lack of legal justification is not a necessary element of the offense of battery. (*People v. Bitner* (1980), 89 Ill. App. 3d 1106, 1112; *People v. Voda* (1979), 70 Ill. App. 3d 430, 437; *People v. Worsham* (1975), 26 Ill. App. 3d 767, 771.) Instead, the justifiable use of force is considered to be an affirmative defense. See Ill. Rev. Stat. 1987, ch. 38, par. 7—14; *Worsham*, 26 Ill. App. 3d at 771.

At trial, defendants did not contend that their use of force was justifiable but instead asserted that they used no force at all. As such, defendants were not entitled to an instruction concerning the "lack of

legal justification," and it was not error in failing to instruct the jury on this issue. See *People v. Lee* (1980), 84 Ill. App. 3d 441, 445 (trial court did not err in failing to instruct the jury *sua sponte* concerning parental justification with respect to disciplining a child).

Defendants next contend that they were denied a fair trial by the cumulative effects of errors occurring during the trial. In particular, defendants argue that the trial court should have declared a mistrial after one of the State's witnesses cried during her testimony, the trial court improperly allowed the State to introduce hearsay statements and opinion testimony into evidence, and that the prosecutor made improper opening and closing statements.

Defendants first argue that a mistrial should have been declared after Kara Egger, the school counselor, broke down and cried during her testimony. Defendants contend that Egger's "emotional outburst" improperly conveyed and strengthened her opinion to the jury that defendants beat Ellaine on May 14, 1988.

A review of the record indicates that the trial court ordered a recess immediately after Egger cried. The trial court denied defendants' motion for a mistrial, indicating that it would instruct the jury that "[n]either sympathy nor prejudice should influence you." Defense counsel characterized Egger's conduct as an "outburst," to which the court replied:

> "I mean, look, Harv [defense counsel], that's the way you characterize it. I didn't really find this to be an outburst. As we know only too well from time to time certain witnesses cry on the stand and we call time and we let them regain their composure and it's done and motions for mistrial are made and they're denied and rightly so.
>
> I mean I don't believe this jury is going to reach any decision on the basis of some emotion that came out from the counselor, okay."

Defendants rely on *People v. Dukes* (1957), 12 Ill. 2d 334, to support their argument that the counselor's crying prejudiced their defense. In *Dukes*, the prosecutor, during closing argument, apparently wept and told the jury that he knew the victim of the homicide. The supreme court determined that this conduct was "highly improper and prejudicial" and, coupled with several instances of improper argument, required reversal of the defendant's conviction. *Dukes*, 12 Ill. 2d at 341-43.

We believe that *Dukes* is factually distinguishable from the case at bar in that it was a witness in our case, and not the prosecutor, who wept during the trial. Furthermore, a genuine emotional outburst

by a witness does not require a mistrial. (*People v. Hudson* (1970), 46 Ill. 2d 177, 197; *People v. Wright* (1975), 32 Ill. App. 3d 736, 745.) Instead, the decision to order a mistrial in such a situation is within the trial court's discretion. (*People v. Bolla* (1983), 114 Ill. App. 3d 442, 451.) It has been held that a trial court's decision not to caution the jury against being influenced by a witness' weeping did not constitute prejudice to the defendant. (*People v. Hairston* (1973), 10 Ill. App. 3d 678, 686.) In the present case, the trial court was in a superior position to determine the impact that the witness' crying may have had on the jury, and we find no abuse of discretion in refusing defendants' request to declare a mistrial.

We next address defendants' contention that the trial court improperly allowed the State to introduce hearsay statements into evidence at trial. Defendants argue that the hearsay testimony violated their sixth and fourteenth amendment rights and requires reversal of their convictions.

■ In order for testimony to constitute hearsay, there must be testimony of an out-of-court statement offered to prove the truth of the matter asserted, with the value of the statement resting on the credibility of the person who made the out-of-court statement. (*People v. Rogers* (1980), 81 Ill. 2d 571, 577; *People v. Miles* (1988), 176 Ill. App. 3d 758, 763.) The purpose of the rule barring hearsay testimony is to "test the value of assertions by exposing the source of the assertion to cross-examination by the party against whom it is offered." *People v. Holman* (1984), 103 Ill. 2d 133, 148, *cert. denied* (1985), 469 U.S. 1220, 84 L. Ed. 2d 347, 105 S. Ct. 1204.

The alleged hearsay statements in this case involve statements which Ellaine made to the school nurse, counselor, and the police officers. The State contends that the statements were admissible as either prior inconsistent statements or excited utterances. We agree with the State that the statements were admissible as prior inconsistent statements.

Under common-law principles, a prior inconsistent statement was considered to be hearsay and hence not admissible as substantive evidence. (See *People v. Gant* (1974), 58 Ill. 2d 178, 183; *People v. Collins* (1971), 49 Ill. 2d 179, 198.) However, under section 115—10.1 of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1987, ch. 38, par. 115—10.1), a prior inconsistent statement is admissible as substantive evidence if:

> "(a) the statement is inconsistent with his testimony at the hearing or trial, and
> (b) the witness is subject to cross-examination concerning

the statement, and

 (c) the statement—

 (1) was made under oath at a trial, hearing, or other proceeding, or

 (2) narrates, describes, or explains an event or condition of which the witness had personal knowledge, and

 (A) the statement is proved to have been written or signed by the witness, or

 (B) the witness acknowledged under oath the making of the statement either in his testimony at the hearing or trial in which the admission into evidence of the prior statement is being sought, or at a trial, hearing, or other proceeding, or

 (C) the statement is proved to have been accurately recorded by a tape recorder, videotape recording, or any other similar electronic means of sound recording." Ill. Rev. Stat. 1987, ch. 38, par. 115—10.1.

■ In the present case, Ellaine's prior statements were inconsistent with her testimony at trial. She was also subject to cross-examination regarding the statements, with the statements describing an event (the alleged battery), of which she had personal knowledge. In addition, Ellaine acknowledged at trial, while under oath, that she made the statements, and an audio tape of a conversation she had with the school counselor was played for the jury. As such, Ellaine's statements to the police officers, nurse, and counselor met the requirements of section 115—10.1 of the Code and were properly admitted at trial.

Our decision on this matter is supported by *People v. Winfield* (1987), 160 Ill. App. 3d 983. In *Winfield*, the complainant, a six-year-old girl, testified at the preliminary hearing that the defendant had sexually attacked her. However, she testified at trial that her testimony at the hearing was "nothing but lies." The appellate court, after first determining that section 115—10.1 of the Code was constitutional, held that it was proper to admit the prior inconsistent statements as substantive evidence at trial. *Winfield*, 160 Ill. App. 3d at 995.

■ Defendants also contend that Ellaine's statements to the school nurse were privileged in that they were given to the nurse in her capacity to render medical care to the students. However, defendants have cited no authority to support their "nurse-patient" privilege argument. This lack of citation to authority fails to satisfy Supreme Court Rule 341(e)(7) (113 Ill. 2d R. 341(e)(7)), and we deem this issue

waived on appeal. See *People v. Trimble* (1989), 181 Ill. App. 3d 355, 356-57.

Defendants next contend that the trial court erred in allowing Sergeant Pabst to testify to his opinion that a crime had been committed. In particular, defendants assert that it was improper for Sergeant Pabst to testify that he notified Officer Campo of the Darien police department that Pabst "had knowledge of a crime occurring in his [Officer Campo's] town." Defendants failed to object to this testimony at trial and did not address this alleged error in their post-trial motion. The failure to object to an alleged error at trial and in a post-trial motion constitutes a waiver of the issue on appeal. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274; *People v. Crayton* (1988), 175 Ill. App. 3d 932, 948.) Consequently, we need not consider this contention on appeal.

Defendants further contend that the prosecutor made several improper comments during opening and closing arguments. In particular, defendants refer to the prosecutor's alleged misstatement of law, improper remarks concerning defendants' national origin, and comments regarding the fact that witness Egger cried during her testimony. However, defendants failed to object to any of the alleged improper comments when they were made at trial. This issue also has been waived, as it is necessary to object to the prosecutor's alleged improper comments at trial and in a post-trial motion to preserve the alleged errors for review. *People v. Hurt* (1988), 175 Ill. App. 3d 970, 978; *People v. Pallardy* (1981), 93 Ill. App. 3d 725, 730.

Moreover, we need not review as matters of plain error any of the issues which we have deemed waived. (See 107 Ill. 2d R. 615(a).) In the present case, it is not plainly apparent from the record that an error affecting substantial rights was committed at trial. (See *Hurt*, 175 Ill. App. 3d at 978-79.) Consequently, we reject defendant's contention that they were denied a fair trial based on the cumulative effect of errors during their trial.

Defendants' fourth contention on appeal is that the trial court improperly appointed counsel to represent Ellaine's interests at trial. Defendants contend that a "long-time family friend," attorney A. Jun Joaquin, Jr., should have been permitted to advise her during the trial. The trial court appointed William Padish, a public defender, to represent her interests at trial, stating that it wanted "a totally neutral party who is not connected with the family to be an advisor on legal matters in this proceeding for [Ellaine]."

Defendants argue that they were prejudiced by this violation of El-

laine's right to choice of counsel for two reasons: first, the jury perceived that "all is well" when in fact Ellaine did not wish to testify against her parents; and second, had attorney Joaquin assisted Ellaine, she "might have been able to present herself" as a credible witness at trial.

■■ The State contends that defendants have waived this argument on appeal. The State correctly notes that defendants have failed to cite any authority to support their argument that the court erred in appointing counsel to represent Ellaine's interests at trial. Thus, we need not address the merits of this argument. (See *Trimble*, 181 Ill. App. 3d at 356-57.) The waiver argument aside, we find no merit in defendant's contention that the trial court erred in appointing a neutral party to represent Ellaine's interests at trial given the conflict of interests between her and defendants. This case is precisely the type of case calling for an independent advisor, and we fail to find any error in not allowing the "close family friend" to represent Ellaine's interests at trial.

Defendants' final contention on appeal is that their convictions violate public policy based on their right to privacy in family decisions. Defendants contend that public policy supports reasonable parental discipline with respect to their children. In support thereof, defendants cite several United States Supreme Court cases dealing with the right to privacy, including *Roe v. Wade* (1973), 410 U.S. 113, 35 L. Ed. 2d 147, 93 S. Ct. 705 (abortion), *Prince v. Massachusetts* (1944), 321 U.S. 158, 88 L. Ed. 645, 64 S. Ct. 438 (family relationships), and *Pierce v. Society of the Sisters of the Holy Names of Jesus & Mary* (1925), 268 U.S. 510, 69 L. Ed. 1070, 45 S. Ct. 571 (child rearing). Defendants also cite to two advice columns from the Weekly World News to "demonstrate a widely-held public opinion allowing reasonable parental discipline."

■■ We agree with defendants that they have a general right to privacy in the manner in which they raise their children, including taking reasonable steps to discipline their children when necessary. However, the State also has a legitimate interest in the welfare of juveniles. (*People v. R.G.* (1989), 131 Ill. 2d 328, 344, citing *Ginsberg v. New York* (1968), 390 U.S. 629, 638-41, 20 L. Ed. 2d 195, 203-05, 88 S. Ct. 1274, 1279-81.) The State certainly has a legitimate interest in protecting juveniles from "unreasonable" parental discipline. This is precisely the situation we have in the present case. The evidence indicated that defendants repeatedly struck Ellaine with their hands, a belt, and a plastic baseball bat over a five- to six-hour period. Ellaine had liquor thrown in her face, had her hair and teeth pulled at, and was kicked

numerous times. We cannot agree with defendants' assertion that the public policy of this State supports such conduct. Consequently, defendants' convictions do not violate the public policy of this State, and there was no infringement of their right to privacy with respect to family decisions and child rearing.

Defendant Victoria Sambo also raises one issue on appeal, namely, that she was denied the effective assistance of counsel at trial. She contends that her attorney, who also represented her husband, had an actual conflict of interest such that he was unable effectively to represent her interests at trial.

 Initially, we note that joint representation of codefendants is not a *per se* violation of a defendant's constitutional right to the effective assistance of counsel. (*Burger v. Kemp* (1987), 483 U.S. 776, 783, 97 L. Ed. 2d 638, 650, 107 S. Ct. 3114, 3120; *People v. Nelson* (1980), 82 Ill. 2d 67, 72.) This rule is necessary due to the fact that a possible conflict of interest exists in almost every instance of multiple representation. (*People v. Cedillo* (1986), 142 Ill. App. 3d 849, 852.) Where, as in the case at bar, the defendant claims ineffective assistance of counsel based upon a conflict of interest, the defendant must show that there was an actual conflict of interest at trial. *People v. Pace* (1987), 163 Ill. App. 3d 1012, 1016; *Cedillo*, 142 Ill. App. 3d at 852.

Defendant Victoria Sambo argues that, if she had been represented by her own attorney, she would have been able to argue that any wrongdoing was solely her husband's responsibility. As such, she asserts that she did not receive an individualized defense at trial. We disagree.

 Defendant has failed to demonstrate any actual conflict of interest at trial. Defendants did not present conflicting or antagonistic defenses at trial, and at no time did Ellaine single out either defendant as the one responsible for the beating. (See *People v. Lee* (1981), 87 Ill. 2d 182, 187-88 (prejudice occurs if the codefendant's defenses are antagonistic or conflicting).) Instead, both defendants were implicated as being responsible for the battery. Absent any showing that an actual conflict of interest existed, defendant Victoria Sambo's claim of ineffective assistance of counsel must fail.

For the above-stated reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

REINHARD and DUNN, JJ., concur.