# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**People v. Green, 2011 IL App (2d) 091123**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROCHELLE GREEN, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-09-1123 |
| Filed | September 22, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant was properly convicted of domestic battery for making physical contact of an insulting or provoking nature with her son, notwithstanding her contentions that she was merely exercising her right to discipline her son for misbehaving and that no physical harm resulted, since she struck him multiple times with a snow brush and her conduct exceeded the bounds of reasonableness, and, further, the appellate court refused to establish a *per se* rule that physical discipline is reasonable as long as a child suffers no physical harm, and the order that defendant make a contribution to "A Safe Place" was upheld over defendant's contention that the facility had nothing to do with a "local anti-crime program" within the meaning of the Unified Code of Corrections. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 08-CM-6278; the Hon. Luis A. Berrones, Judge, presiding. |

| Judgment | Affirmed. |
|---|---|
| Counsel on Appeal | Thomas A. Lilien and Kathleen Weck, both of State Appellate Defender's Office, of Elgin, for appellant. |
| | Michael J. Waller, State's Attorney, of Waukegan (Lawrence M. Bauer, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Christopher M. Kanis, of Savoy, for the People. |
| Panel | JUSTICE BURKE delivered the judgment of the court, with opinion. Justices Zenoff and Schostok concurred in the judgment and opinion. |

**OPINION**

¶ 1    Following a bench trial, defendant, Rochelle Green, was convicted of domestic battery for making physical contact of an insulting or provoking nature with her son, Rafayel Mahomes, pursuant to section 12-3.2(a)(2) of the Criminal Code of 1961 (Code) (720 ILCS 5/12-3.2(a)(2) (West 2010)). The trial court sentenced defendant to one year of conditional discharge and ordered her to attend a parenting class, perform public service, and contribute $100 to "A Safe Place." Defendant raises two arguments on appeal: (1) because her son sustained no bodily injuries, her actions as a parent constituted a reasonable use of corporal punishment, requiring reversal of her conviction; and (2) the trial court exceeded its statutory authority in ordering defendant to contribute $100 to "A Safe Place." We affirm.

¶ 2                                        FACTS

¶ 3    On March 14, 2008, Christine Schmidt witnessed defendant and her son "fighting" inside a car, which was parked in the parking lot of St. John's School in Libertyville, Illinois. Schmidt testified that defendant first was seated in the driver's seat and was reaching back to her son in the backseat. Although the doors to defendant's car were closed, Schmidt could see "arms *** kind of moving around" inside the car. Schmidt then saw defendant outside the car, holding a snow brush while she stood over Rafayel. The back of Rafayel's head was inside the back passenger doorway of the car, but his body was on the ground, outside the car, in a supine position. The snow brush was about 2½ feet long with bristles on one end and a scraper on the other. Schmidt saw defendant beating the child with the snow brush

-2-

while defendant stood over him.[1] Schmidt estimated that defendant struck Rafayel on the upper part of his body around eight times. During the altercation, the school secretary, Christine Grasenick, attempted to stop defendant. Schmidt heard defendant say that Rafayel "was being disrespectful" and that he had tried to hit or kick out the car windows.

¶ 4 Schmidt called 911 at Grasenick's request. As defendant drove off, Schmidt saw the boy turn around in the car, place "his hands out in the back window" and "flex his fingers," as though he was saying "help me." Schmidt believed that Rafayel looked sad.

¶ 5 During cross-examination, Schmidt stated that, when she first saw defendant and Rafayel fighting in the car, Rafayel was "hitting the windows in the car," his arms were moving, and defendant and Rafayel were "talking or yelling." Rafayel was wearing a down jacket.

¶ 6 Grasenick testified that, while looking out a second-story window of Saint John's School, she saw a woman inside a car, swinging an object at a backseat passenger. After witnessing three swats, Grasenick rushed down to the parking lot to find defendant standing over Rafayel. Grasenick yelled to defendant to "stop that!" Defendant responded that Rafayel "was being disrespectful" and that he had tried to hit or kick out the car windows. Defendant continued to swing the snow brush 10 to 15 more times, striking Rafayel from his legs to his upper torso, before Grasenick told Schmidt to call the police. Grasenick saw defendant strike Rafayel "all over from the legs to the upper body" with multiple "hard blows." After Grasenick told Schmidt to call 911, defendant put Rafayel in the backseat of the car and drove off. As defendant drove away, Grasenick saw Rafayel "in the back window with his arms stretched out saying [']help.['] "

¶ 7 After the report to 911, Libertyville police officer James Daniel stopped defendant's car. Defendant told Daniel that she never struck Rafayel but that she had shaken the snow brush at him while he was in the car, because he was misbehaving. Rafayel told Daniel that defendant "got mad and hit him" on his arms and legs with the snow brush. He also told Daniel that he felt no pain. However, at the police station, Rafayel reported that the back of his calf hurt from being hit by the snow brush. After an inspection, Daniel could find no visible injuries to Rafayel.

¶ 8 Rafayel was 10 years old at the time of trial. Rafayel testified that he was upset that he could not go to a school dance and he was so upset that he slammed the car door. Rafayel acknowledged that he told Daniel that his mother struck him, but he stated that it was not true and that he said it because he was mad at her. He also denied that his mother yelled at him or hit him with a snow brush.

¶ 9 Defendant had been charged by information with two counts of domestic battery. Count I alleged that defendant knowingly caused bodily harm to Rafayel (720 ILCS 5/12-3.2(a)(1) (West 2010)). Count II alleged that defendant made physical contact of an insulting or provoking nature when she struck her son about the body (720 ILCS 5/12-3.2(a)(2) (West 2010)). The trial court found that defendant did not cause bodily harm to Rafayel, and the court dismissed count I. However, as to count II, the court found defendant guilty. The court

---

[1]The record does not indicate whether defendant struck her son with the brush side or the scraper side of the snow brush.

found that defendant's actions constituted discipline, but the court had to determine whether defendant had the constitutional right to discipline her child in the manner that she did. Relying on *People v. Roberts*, 351 Ill. App. 3d 684 (2004), the court observed that parents have a common-law right to discipline their children, "even with the use of corporal punishment," but that the corporal punishment must be reasonable given the circumstances. The court noted that the basis for the guilty finding was not that any corporal punishment is insulting by its very nature, but that striking the child "8 to 16" times with the snow brush was not reasonable under the circumstances.

¶ 10    Following the denial of defendant's posttrial motions, defendant timely appeals.

¶ 11                                      ANALYSIS

¶ 12                Physical Contact of an Insulting or Provoking Nature

¶ 13    We begin with defendant's contention that the trial court erred by finding her guilty of domestic battery for making physical contact of an insulting or provoking nature with her son. Defendant asserts that the punishment she administered was reasonable and thus legally justified, as she had a parental right to discipline her son and Rafayel suffered no physical harm. The governing statute on this point is section 12-3.2(a)(2) of the Code, which provides that a person commits domestic battery if he or she "intentionally or knowingly without legal justification by any means *** [m]akes physical contact of an insulting or provoking nature with any family or household member." 720 ILCS 5/12-3.2(a)(2) (West 2010).

¶ 14    A parent's right to corporally punish his or her child is derived from the right to privacy, which is viewed as implicit in the United States Constitution. This right encompasses the right to care for, control, and discipline one's own children. The " '[d]iscipline' " allowed has been interpreted by courts "to extend to *reasonable* corporal punishment." (Emphasis in original.) *In re F.W.*, 261 Ill. App. 3d 894, 898 (1994). While parents have a general right to privacy in the manner in which they raise their children, this right must be balanced against the State's legitimate interest in preventing and deterring the mistreatment of children. *In re B.H.*, 389 Ill. App. 3d 316, 320 (2009); *People v. Sambo*, 197 Ill. App. 3d 574, 587 (1990) (State has legitimate interest in the welfare of juveniles and "protecting [them] from 'unreasonable' parental discipline"). A parent who inflicts corporal punishment "exceeding the boundaries of reasonableness" may, depending on the circumstances, be subject to prosecution for cruelty to children. *F.W.*, 261 Ill. App. 3d at 898; see *People v. Ball*, 58 Ill. 2d 36, 39 (1974); *Roberts*, 351 Ill. App. 3d at 690.

¶ 15    Initially, the parties disagree as to our standard of review. Defendant asserts that the questions of whether she had the parental right to use corporal punishment on her misbehaving child and whether such punishment could be characterized as "unreasonable" when her son sustained no injury at all are not factual issues but legal questions, which are reviewed *de novo*. Defendant further maintains that appellate review is *de novo* when, as in this case, the facts are undisputed and the legal question is whether the uncontested facts were sufficient to prove the elements of the offense. The State argues that whether the trial court erred in finding defendant's method of discipline unreasonable is a factual question, which we review under the manifest-weight-of-the-evidence standard. We disagree with both

arguments.

¶ 16    Even though the parental right to discipline is not a statutory affirmative defense, the common-law rule that parents may take " 'reasonable steps to discipline their children when necessary' " is, like self-defense, a legal justification for an otherwise criminal act. See *Roberts*, 351 Ill. App. 3d at 688-89 (quoting *F.W.*, 261 Ill. App. 3d at 901, and citing Restatement (Second) of Torts § 147(1) (1965)). In order to negate such a legal justification, the State must prove the defendant guilty beyond a reasonable doubt as to the affirmative defense together with all the other elements of the offense. See *People v. Lee*, 213 Ill. 2d 218, 225 (2004) (discussing the State's burden in the context of an analogous self-defense claim); 720 ILCS 5/7-14 (West 2010); 720 ILCS 5/3-2(b) (West 2010) (where affirmative defense is raised, "the State must sustain the burden of proving the defendant guilty beyond a reasonable doubt as to [the affirmative defense] together with all the other elements of the offense"). To prove defendant guilty of the domestic battery of her son, the State had to prove beyond a reasonable doubt that defendant intentionally or knowingly without legal justification by any means made physical contact of an insulting or provoking nature with her son. See 720 ILCS 5/12-3.2(a)(2) (West 2010). In addition, to sustain a conviction of domestic battery where a claim of parental right has been asserted, the State must also prove beyond a reasonable doubt that the discipline used exceeded the standards of reasonableness. See Restatement (Second) of Torts § 147(1) (1965).

¶ 17    We reject defendant's contention that the issue presents a question of law, subject to *de novo* review. In support of this contention, defendant cites to *People v. Smith*, 191 Ill. 2d 408, 411 (2000), where our supreme court held that, where the facts of the case are not in dispute, the defendant's guilt is a question of law, which should be reviewed *de novo*. Unlike in the present case, in *Smith* the court essentially was asked to construe the meaning of a statute as it applied to the undisputed facts of that case. Moreover, unlike in *Smith*, here the issue does not involve interpretation of the law but, rather, application of the law to the facts.

¶ 18    The State relies on this court's opinion in *People v. Davis*, 88 Ill. App. 3d 728, 732 (1980), in which we reviewed a school bus driver's claim of reasonable discipline under the manifest-weight-of-the-evidence standard. However, we were not asked to resolve the question of which standard of review applied to the case. To the extent that we applied the manifest-weight standard of review in *Davis*, we depart from that position and hold that the question of whether a parent's use of corporal punishment was reasonable and thus legally justified is a question of fact and subject to the beyond-a-reasonable-doubt standard.

¶ 19    When there is a challenge to the evidence, we look at all the evidence in a light most favorable to the State and ask if any rational trier of fact could find the elements of the charged offense to be proved beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *People v. Minniweather*, 301 Ill. App. 3d 574, 577 (1998). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We "impinge[ ] upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law." *Jackson*, 443 U.S. at 319. This standard of review applies regardless of whether the evidence is direct or circumstantial, and regardless of whether the defendant received a bench or jury trial.

*People v. Cooper*, 194 Ill. 2d 419, 431 (2000).

¶ 20       Defendant cites *Fletcher v. People*, 52 Ill. 395 (1869), for the proposition that the legal system will not punish a parent for disciplining his or her child as long as the parent does not commit wanton and needless cruelty upon the child. Contrary to defendant's assertion, parental rights of discipline are limited by a standard of reasonableness, not malice. *Ball*, 58 Ill. 2d at 38-39. As far back as 1869, the supreme court in *Fletcher* recognized that parental authority over children must be exercised within "the bounds of reason and humanity." *Fletcher*, 52 Ill. at 397.

¶ 21       Defendant argues that courts have uniformly found that corporal punishment exceeds the bounds of reasonableness *only* when the child sustains some type of physical injury. Defendant cites *F.W.*, 261 Ill. App. 3d at 903 (injuries from parent's use of two-foot-long board with protruding metal brackets was unreasonable use of discipline); *Sambo*, 197 Ill. App. 3d at 587-88 (parent's conduct of kicking child, hitting her with hands, a plastic baseball bat, and a belt, throwing liquor in her face, and pulling her hair resulting in bruises could not be legally justified); and *People v. Tomlianovich*, 161 Ill. App. 3d 241, 242 (1987) (paddling was unreasonable discipline when it severely bruised child's buttocks).

¶ 22       Defendant notes that in other scenarios courts have found that the punishment imposed was reasonable even when the child sustained physical injury. See *In re J.P.*, 294 Ill. App. 3d 991, 1004-06 (1998) (mother's use of wooden spoon to spank child not excessive corporal punishment, although it caused bruising on at least one occasion); *People v. DeCaro*, 17 Ill. App. 3d 553, 556 (1974) (punishment not excessive when teacher used 12-inch ruler to spank two students on buttocks and back of legs, resulting in bruises). Defendant further observes that no case has held that a parent exercised unreasonable discipline when the child sustained no injury at all, as was the case here.

¶ 23       While the cases relied on by defendant are instructive, none of them dealt with the standard of exceeding the bounds of reasonableness in the context of the offense of domestic battery by making physical contact of an insulting or provoking nature. 720 ILCS 5/12-3.2(a)(2) (West 2010). The domestic battery statute's plain language defines the offense in terms of contact that insults or provokes the victim, and the contact does not need to cause physical injury. *People v. DeRosario*, 397 Ill. App. 3d 332, 334 (2009).

¶ 24       Moreover, the degree of injury inflicted upon a child is not the exclusive or determinative factor in evaluating whether the discipline exceeded the bounds of reasonableness. See *F.W.*, 261 Ill. App. 3d at 903. Other factors to consider include the likelihood of future punishment that might be more injurious, the psychological effects of the discipline on the child, and whether the parent was calmly attempting to discipline the child or whether the parent was lashing out in anger. *F.W.*, 261 Ill. App. 3d at 903. Additionally, when corporal punishment is administered there is no assurance that a child will not suffer psychological effects or that the discipline will be inflicted moderately or responsibly. In the heat of anger, some parents are likely to exceed the bounds of reasonableness despite the lack of physical harm. However, both the reasonableness of, and the necessity for, the punishment is to be determined by the finder of fact, under the circumstances of each case. See *People v. Ball*, 15 Ill. App. 3d 143, 149 (1973) (Moran, J., dissenting) (citing *People v. Curtiss*, 300 P. 801,

803 (Cal. App. Dep't Super. Ct. 1931)), *rev'd*, 58 Ill. 2d 36 (1974).

¶ 25   Here, the trial court, sitting as the trier of fact, considered the following evidence in finding that defendant exercised unreasonable discipline and was guilty of domestic battery: (1) defendant struck her son with multiple hard blows about his body, striking at his torso and legs, over the course of several minutes, with an object approximately 2½ feet long; (2) defendant stood over her son, striking downwards at him while he lay face up in a supine position, his head on the threshold of the car and his legs on the school parking lot; (3) during the attack, Rafayel had his arms up and was crying and "trying to defend himself"; (4) a witness went to the parking lot and pleaded with defendant to stop striking the boy; (5) defendant continued striking her son despite the pleas; (6) after one witness called the police, defendant drove away; and (7) as she drove off, Rafayel stuck his hands out of the vehicle, looked at the witnesses, and flexed his fingers as if he were asking for help. Although Rafayel did not suffer any physical injuries, the evidence was sufficient to find that defendant's conduct exceeded the bounds of reasonableness and that she was guilty of domestic battery by making physical contact of an insulting or provoking nature.

¶ 26   We decline to hold that, as a matter of law, when no bodily harm results from the parent's conduct, he or she cannot be found guilty of exceeding the bounds of reasonableness under the domestic battery statute as written. It is the province of the legislature to create a parental discipline exception to the offense of domestic battery by insulting or provoking physical contact.[2] We will not establish a *per se* rule that it is reasonable for parents to physically discipline their children in any conceivable manner as long as the children suffer no physical harm. Judges must "take care not to create a legal standard from our personal notions of how best to discipline a child." *J.P.*, 294 Ill. App. 3d at 1005. That is best left to the trier of fact under the unique, factual circumstances of the case.

¶ 27                                 Order to Contribute to "A Safe Place"

¶ 28   We next address defendant's contention, which she raises for the first time on appeal, that the trial court exceeded its authority by ordering her to contribute $100 to "A Safe Place." Defendant attached to the appendix of her appellate brief information from the Internet "home page" for "A Safe Place," and she argues, among other things, that the facility is a women's shelter that has nothing to do with a "local anti-crime program" within the meaning of sections 5-6-3(b)(12) and (b)(13) of the Unified Code of Corrections. 730 ILCS 5/5-6-3(b)(12), (b)(13) (West 2010). Defendant acknowledges that the contribution to "A Safe Place" was not challenged in the trial court, but she asserts that, because the trial court exceeded its statutory authority in ordering it, the order was void, and thus she did not forfeit the issue.

¶ 29   The State filed a motion to strike the Internet content about "A Safe Place" from defendant's appendix for improperly supplementing the record with information *dehors* the

_____

[2]In the order-of-protection statute, the legislature has created an exception to the definition of "abuse" for "reasonable direction of a minor child by a parent or person *in loco parentis*." 725 ILCS 5/112A-3(1) (West 2010).

record. We granted the motion and ordered that this information be stricken from the record. Any argument pertaining to material stricken from the record must be disregarded. See, *e.g.*, *Stokes v. Colonial Penn Insurance Co.*, 313 Ill. App. 3d 202, 204 (2000). Defendant does not cite to any other evidence to substantiate any of her arguments, including the claim that "A Safe Place" does not qualify as a "local anti-crime program" within the meaning of the Unified Code of Corrections. Without any facts in the record to support defendant's arguments, we must assume that the trial court properly ordered the contribution. See, *e.g.*, *People v. Ortiz*, 313 Ill. App. 3d 896, 900 (2000).

¶ 30                                    CONCLUSION
¶ 31        For the preceding reasons, we affirm the judgment of the circuit court of Lake County.

¶ 32        Affirmed.