2020 IL App (2d) 200028-U
No. 2-20-0028
Order filed December 2, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 19-DV-274 |
| CHARLES EDWARD BOYER, | ) ) ) | Honorable Joshua A. Dieden, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Jorgensen and Schostok concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Defendant's claim that the State failed to prove his actions were not a reasonable exercise of parental discipline and, thus, failed to prove his guilt beyond a reasonable doubt, is forfeited for failure to raise that defense in the trial court.

¶ 2   Defendant, Charles Edward Boyer, was charged with two counts of domestic battery. 720 ILCS 5/12-3.2(1)(1), (2) (West 2018). Following a bench trial, defendant was convicted of both counts, the trial court merged count II into count I, and the court sentenced defendant to one year of conditional discharge. The dispositive issue raised on appeal is whether defendant raised in the trial court his defense that he was reasonably disciplining his daughter, M.B., when the incident

occurred. We determine that defendant forfeited any claim that he was reasonably disciplining M.B. when the incident occurred, as he failed to raise that defense in the trial court. Accordingly, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     The counts charging defendant with domestic battery alleged, in relevant part, that defendant knowingly and without legal justification battered his daughter, M.B., when defendant pulled on M.B.'s arm.

¶ 5     The uncontradicted evidence presented at trial revealed that, on March 4, 2019, M.B. was at home with defendant and two of M.B.'s siblings. M.B. who was 16 years old and had a bedroom in the lower level of the home, had stayed home from school that day because she did not feel well. At around 8:30 p.m., M.B. went to the kitchen to make herself some Ramen noodles. Defendant, who had half of his left foot amputated and parts of his left Achilles tendon cut, was sitting in the kitchen with his left foot propped up on a chair. While in the kitchen, M.B. was streaming music through her phone that she kept in her pocket and was listening to the music through corded earbuds. M.B. boiled some water and was washing some dishes she had left in the sink when defendant began tapping her on her right shoulder.

¶ 6     Conflicting evidence was presented as to what happened next. According to M.B., she told defendant she did not want to talk, as she was in a bad mood, and she continued washing dishes. Defendant then stood up, walked over to M.B., and yanked M.B.'s corded earbuds out of her ears so that defendant could talk to her. M.B., who was scared, stated that defendant was angry because she had not listened to him. Defendant began yelling at M.B., telling her that she should not ignore him. M.B. stated that defendant then grabbed the upper part of her left arm "very hard," pulled on her hair, which she had in a ponytail, and continued yelling at her. M.B. tried to push defendant

away, but defendant would not let go. M.B. then began hitting defendant on the head to get defendant to let her go. After a while, defendant let go of M.B., and M.B. went downstairs to her bedroom. While in her room, M.B. cried and texted her mother. In one text, M.B. said that "[defendant] grabbed my [*sic*] and pulled my hair and scratched me."

¶ 7 Defendant presented a different account of what happened. Defendant, who was 61 years old, tried to get M.B.'s attention in the kitchen, M.B. just groaned or growled at him, and she then turned away. This "annoyed" defendant. Defendant explained that "[he does not] think children should be allowed to dictate to their parents when they'll let them talk to them." After M.B. ignored him, defendant reached out with his hand to touch M.B.'s arm, hoping to get her attention and talk to her about the fact that she had not been taking care of her dog that day. M.B. again growled and pulled away from defendant. Defendant stood up, used one crutch to hop over to M.B., and pulled M.B.'s left earbud out in a nonviolent way. Defendant "took ahold of [M.B.'s] arm gently" so that "[M.B. would] turn toward [defendant]." Defendant elaborated that he grabbed the upper portion of M.B.'s left arm, with an amount of force he described as "nothing special," and asked M.B., "[W]hat do you think you're doing?" M.B. tried to yank her arm away, causing defendant to lose his balance. M.B. pulled defendant closer to her, defendant held on tighter to M.B., and M.B. rammed herself into defendant. Defendant "h[e]ld on for dear life," trying not to "face plant" for the second time that day, and M.B. grabbed the crutch defendant was not using. M.B. then hit defendant with the crutch. Eventually, M.B. stopped using the crutch to hit defendant, used her hand to hit defendant, who ended up "draped" across a kitchen chair. M.B. barreled past defendant, telling defendant that she had had a bad day and did not want to be yelled at.

¶ 8 Uncontradicted evidence revealed what happened next. Defendant testified that, after M.B. went to her room, he called the police, because, given some past events, he wanted to document

the incident. Officer Dennis Stachura testified that he arrived at the house at around 8:55 p.m. Defendant, who was "shaken up" and a "little agitated," admitted to the officer that he grabbed M.B.'s arm to talk to her and pulled the corded earbuds out of M.B.'s ears so that she could hear defendant. Defendant told the officer that, right after defendant did that, M.B. began hitting defendant on the head. The officer, who examined defendant, did not see any injuries to defendant's head. After talking to defendant, the officer spoke to M.B. M.B., who was crying and shaking, told the officer that defendant grabbed her ponytail before pulling her corded earbuds out. M.B. also told the officer that defendant grabbed her arm. The officer's photograph of M.B.'s arm was admitted at trial. The officer described what was depicted in the photograph, noting that one "can distinctly see finger marks in [M.B.'s] bicep area where [one] can visibly see fingers."

¶ 9 After the trial court found defendant guilty and sentenced him, defendant filed a motion to reconsider and a motion for a new trial. Defendant claimed, among other things, that he did not intend to harm M.B. Rather, "[defendant] was simply as a parent, trying to speak to [M.B.] and not tolerate her disrespectful behavior of ignoring him." The trial court denied these motions. This timely appeal followed.

¶ 10                                  II. ANALYSIS

¶ 11 Defendant argues on appeal that the evidence was insufficient to prove his guilt beyond a reasonable doubt. Specifically, he claims that the State failed to prove that his actions toward M.B. were not a reasonable exercise of parental discipline. The State responds that defendant forfeited any defense of reasonable parental discipline by failing to raise it in the trial court. Because resolving the forfeiture issue does not require us to defer to the trial court's findings or reasoning, our review is *de novo*. See *People v. Mitchell*, 353 Ill. App. 3d 838, 844 (2004).

¶ 12 In addressing the forfeiture issue, we begin with some background. As noted, defendant was charged with domestic battery. "A person commits domestic battery if he or she knowingly without legal justification by any means *** [c]auses bodily harm to any family or household member." 720 ILCS 5/12-3.2(a)(1) (West 2018). Illinois common law recognizes that reasonable parental discipline is an affirmative defense to domestic battery. *People v. Green*, 2011 IL App (2d) 091123, ¶ 16. Although reasonable parental discipline is not explicitly defined, our supreme court has recognized that reasonableness in this context does not cover every type of harm directed at one's child. *Fletcher v. People*, 52 Ill. 395, 397 (1869). Rather, reasonableness is something less than "wanton and needless cruelty" inflicted "upon [one's] child, either by imprisonment *** or by inhuman beating[.]" *Id.* Similarly, what constitutes discipline is not boundless. Discipline encompasses that conduct "necessary to control, train, and educate" one's child. Black's Law Dictionary 1288 (10th ed. 2014) (defining "parental-discipline privilege").

¶ 13 The mere fact that parents may reasonably discipline their children does not mean that the affirmative defense of reasonable parental discipline is automatically raised in every domestic battery case where a parent is charged with harming his child. In any proceeding, a defendant who has a defense must raise it in some way. The law is clear that, when a defendant is charged with a felony, he must notify the State before trial commences of all defenses he wishes to raise. See Ill. S. Ct. R. 411 (eff. Dec. 9. 2011) (discovery rules under Illinois Supreme Court Rules apply in all cases where the defendant is charged with a felony); Ill. S. Ct. R. 413(d) (eff. July 1, 1982) (defendant charged with a felony must inform the State about any defense the defendant wishes to advance at trial).

¶ 14 These notification requirements do not apply when a defendant is charged, as here, with a misdemeanor. *People v. Williams*, 87 Ill. 2d 161, 164 (1981); see 720 ILCS 5/12-3.2(b) (West

2018) (domestic battery is a Class A misdemeanor). Moreover, in a misdemeanor prosecution, the State must give the defendant evidence negating his guilt, but the defendant has no obligation to provide the State with discovery. *Williams*, 87 Ill. 2d at 165-66 (citing *People v. Schmidt*, 56 Ill. 2d 572, 575 (1974)).

¶ 15    The question remains, then, how a defendant charged with a misdemeanor raises a defense. Neither party has cited any authority addressing that issue. In conducting our own research, we found insightful *People v. Costello*, 2014 IL App (3d) 121001. There, the defendant was charged with violating an order of protection that required him to turn over all firearms, including several specified weapons, that he kept in his home. *Id.* ¶ 3. At a stipulated bench trial, evidence was presented that the police did not see firearms in the defendant's home when they served the order of protection or executed a subsequent warrant. *Id.* ¶ 4. The defendant was convicted of violating the order of protection, a misdemeanor, and he appealed. *Id.* ¶¶ 1, 3-4, 8.

¶ 16    On appeal, the defendant argued that he was not proved guilty beyond a reasonable doubt of violating the order of protection, because the State failed to present evidence that he possessed any firearms and, thus, could comply with the order of protection. *Id.* ¶ 10. In addressing that argument, the appellate court noted that the defendant never raised in the trial court the common-law affirmative defense of impossibility. *Id.* ¶ 13. The court determined that, because the State did not present any evidence supporting that defense, the defendant was required to raise the defense by presenting "some evidence" that it was impossible for him to comply with the order of protection. *Id.* ¶ 16. The court explained that the defendant failed to present "some" evidence of impossibility, as the mere fact that the authorities did not see any firearms in the defendant's home did not exclude the possibility that the defendant hid his firearms at another location. *Id.* ¶ 17. If

the defendant did so, it would not be impossible for him to comply with the order of protection by surrendering his firearms to the authorities. *Id.*

¶ 17 Here, like in *Costello*, defendant was charged with a misdemeanor and claims that he raised at his bench trial a common-law affirmative defense. We, like the court in *Costello*, must conclude that defendant did not raise his defense, as neither side presented "some evidence" indicating that he was reasonably disciplining M.B. when the incident occurred. In his brief, defendant claims that "[w]hile [reasonable parental discipline] was not explicitly argued by defense counsel at trial, the defendant did clearly testify that he believed [M.B.'s] behavior was unacceptable and he did what he felt he had to do to get her to listen to him despite her best efforts to ignore him." (White Brief 7) Though defendant testified that children should not ignore their parents, he did not indicate that he grabbed M.B.'s arm to discipline her in any way. He testified that he grabbed M.B.'s arm "gently" to get her attention so that she would turn toward him. He said that when M.B. tried to pull away, he held her arm tighter to prevent himself from falling to the floor. Defendant made it clear that he never intended to harm M.B.

¶ 18 Similarly, the State's evidence did not present "some evidence" that defendant grabbed M.B.'s arm to discipline her. M.B.'s and Stachura's testimony, coupled with the text M.B. sent to her mother and the picture of M.B.'s bruised arm, tended to show that defendant grabbed M.B. out of frustration or anger.

¶ 19 Defendant argues that, because the defense of reasonable parental discipline is not statutorily codified, he did not have to formally raise it in the trial court. This is true under *Costello*, which teaches that a defendant charged with a misdemeanor may raise a common-law defense at a bench trial by simply presenting "some evidence" supporting that defense. *Costello*, 2014 IL

App (3d) 121001, ¶ 16. Here, however, defendant raised the defense neither formally nor through the quantum of evidence mentioned in *Costello*.

¶ 20    Having concluded that defendant did not raise a defense of reasonable parental discipline, we now must consider what effect that has on defendant's case. The State argues that, because defendant never raised his defense in the trial court, he has forfeited on appeal any claim that his actions were justified. We agree.

¶ 21    Instructive on this point is *People v. Bardsley*, 2017 IL App (2d) 150209. There, the defendant was convicted of aggravated assault. *Id.* ¶ 3. Evidence presented at the defendant's bench trial revealed that the defendant attempted to bite a hospital security officer while the officer was securing the defendant's restraints. *Id.* ¶ 6. The defendant testified that he never intended to bite the officer. *Id.* ¶ 10. Rather, the defendant claimed that he was biting at the restraints to free his hand when the officer put his hand close to the defendant's mouth. *Id.*

¶ 22    On appeal, the defendant argued that the State failed to rebut his claim of self-defense and prove his guilt beyond a reasonable doubt. *Id.* ¶ 16. The State responded that the defendant was raising self-defense for the first time on appeal. *Id.* We agreed with the State that self-defense was not raised below. Not only did the defendant not formally raise the defense at trial, there was not enough evidence of self-defense to require the trial court to consider the defense. *Id.* ¶ 17. Because the defense was not raised below, the defendant forfeited it on appeal. *Id.*

¶ 23    Here, no evidence was presented suggesting that defendant was reasonably disciplining M.B. when he grabbed her arm. Therefore, because the defense of reasonable parental discipline was not raised below, we conclude, under *Bardsley*, that defendant forfeited on appeal his claim that he was justified in grabbing M.B.'s arm.

¶ 24 Defendant argues that, if this court concludes that the defense of reasonable parental discipline was forfeited, he is entitled to a new trial because his trial counsel was clearly ineffective. We will not consider whether defendant's trial counsel was ineffective, as defendant is raising this argument for the first time in his reply brief. *People v. Accardo*, 139 Ill. App. 3d 813, 816-17 (1985).

¶ 25                                    III. CONCLUSION

¶ 26 For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 27 Affirmed.